*PRELIMINARY PRINT*

## VOLUME 599 U. S. PART 1
### PAGES 600–634

# OFFICIAL REPORTS

OF

# THE SUPREME COURT

JUNE 22, 2023

Page Proof Pending Publication

REBECCA A. WOMELDORF

REPORTER OF DECISIONS



NOTICE: This preliminary print is subject to formal revision before the bound volume is published. Users are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D.C. 20543, pio@supremecourt.gov, of any typographical or other formal errors.

## PUGIN *v.* GARLAND, ATTORNEY GENERAL

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. 22–23.   Argued April 17, 2023—Decided June 22, 2023*

In two immigration proceedings, noncitizens Fernando Cordero-Garcia and Jean Francois Pugin were determined removable from the United States on the ground that they had convictions for aggravated felonies—namely, offenses "relating to obstruction of justice." See 8 U. S. C. §§ 1101(a)(43)(S), 1227(a)(2)(A)(iii). On appeal, the Ninth Circuit concluded that Cordero-Garcia's state conviction for dissuading a witness from reporting a crime did not constitute an offense "relating to obstruction of justice" because the state offense did not require that an investigation or proceeding be *pending*. By contrast, the Fourth Circuit concluded that Pugin's state conviction for accessory after the fact constituted an offense "relating to obstruction of justice" even if the state offense did not require that an investigation or proceeding be pending.

*Held*: An offense may "relat[e] to obstruction of justice" under § 1101(a)(43)(S) even if the offense does not require that an investigation or proceeding be pending. Federal law provides that noncitizens convicted of a federal or state crime constituting an "aggravated felony" are removable from the United States. § 1227(a)(2)(A)(iii). Congress expanded the definition of "aggravated felony" in 1996 to include offenses "relating to obstruction of justice." § 1101(a)(43)(S). Dictionary definitions, federal laws, state laws, and the Model Penal Code show that federal or state obstruction offenses "relat[e] to obstruction of justice" under § 1101(a)(43)(S) even if the offense does not require that an investigation or proceeding be pending. This extensive body of authority reflects common sense. Individuals can obstruct the process of justice even when an investigation or proceeding is not pending. Indeed, obstruction of justice is often "most effective" when it prevents "an investigation or proceeding from commencing in the first place." Brief for Attorney General 15. The Court declines to adopt an interpretation of the statute that would exclude many common obstruction offenses from the definition of aggravated felony under § 1101(a)(43)(S). Finally,

---

\*Together with No. 22–331, *Garland*, *Attorney General* v. *Cordero-Garcia*, *aka Cordero*, on certiorari to the United States Court of Appeals for the Ninth Circuit.

Syllabus

the phrase "relating to" resolves any doubt about the scope of § 1101(a)(43)(S), because it ensures that the statute covers offenses having a connection with obstruction of justice—which surely covers common obstruction offenses that can occur when an investigation or proceeding is not pending.

Pugin's and Cordero-Garcia's contrary arguments lack merit. *First*, even if a specific prohibition in 18 U. S. C. § 1503(a) requires that an investigation or proceeding be pending, Congress defined offenses under § 1101(a)(43)(S) more broadly. *Second*, the historical record does not support the claim that obstruction of justice requires that an investigation or proceeding be pending. *Third*, reading § 1101(a)(43)(S) to cover offenses that do not require a pending investigation or proceeding may create some redundancy, but the better overall reading of a statute sometimes contains some redundancy. *Fourth*, resort to the rule of lenity has no place here because the traditional tools of statutory interpretation show that an offense "relating to obstruction of justice" does not require that an investigation or proceeding be pending. Pp. 603–611.

No. 22–23, 19 F. 4th 437, affirmed; No. 22–331, 44 F. 4th 1181, reversed and remanded.

KAVANAUGH, J., delivered the opinion of the Court, in which ROBERTS, C. J., and THOMAS, ALITO, BARRETT, and JACKSON, JJ., joined. JACKSON, J., filed a concurring opinion, *post*, p. 611. SOTOMAYOR, J., filed a dissenting opinion, in which GORSUCH, J., joined, and in which KAGAN, J., joined as to all but Part III, *post*, p. 614.

*Deputy Solicitor General Gannon* argued the cause for the federal parties in both cases. With him on the briefs were *Solicitor General Prelogar, Principal Deputy Assistant Attorney General Boynton, Frederick Liu, John W. Blakeley*, and *Aimee J. Carmichael.*

*Martha Hutton* argued the cause for petitioner in No. 22–23. With her on the brief were *Michael R. Dreeben, Brian D. Boyle, Jenya Godina*, and *Bruce Pettig.*

*Mark C. Fleming* argued the cause for respondent in No. 22–331. With him on the brief was *Catherine M. A. Carroll.*†

---

†Briefs of *amici curiae* urging reversal in No. 22–23 and affirmance in No. 22–331 were filed for Criminal Law Scholars by *Michelle S. Kallen*; for the Immigrant Defense Project et al. by *Emma C. Winger, Manuel*

JUSTICE KAVANAUGH delivered the opinion of the Court.

Federal law provides that noncitizens convicted of an "aggravated felony" are removable from the United States. The definition of "aggravated felony" includes federal or state offenses "relating to obstruction of justice." 8 U. S. C. § 1101(a)(43)(S). The question here is whether an offense "relat[es] to obstruction of justice" under § 1101(a)(43)(S) even if the offense does not require that an investigation or proceeding be *pending*. That question arises because some obstruction offenses can occur when an investigation or proceeding is not pending, such as threatening a witness to prevent the witness from reporting a crime to the police. We conclude that an offense may "relat[e] to obstruction of justice" under § 1101(a)(43)(S) even if the offense does not require that an investigation or proceeding be pending.

I

This case stems from two immigration proceedings. Fernando Cordero-Garcia is a citizen of Mexico. In 2009, Cordero-Garcia was convicted of several California offenses, including dissuading a witness from reporting a crime. Jean Francois Pugin is a citizen of Mauritius. In 2014, Pugin was convicted of the Virginia offense of being an accessory after the fact to a felony.

As relevant here, the U. S. Department of Homeland Security charged both Cordero-Garcia and Pugin as removable from the United States on the ground that they had convictions for aggravated felonies—namely, offenses "relating to

*D. Vargas*, and *Andrew Wachtenheim*; for the National Association of Federal Defenders by *David Menninger*, *Keith M. Donoghue*, *Tracy Dreispul*, and *Judith H. Mizner*; and for the National Immigrant Justice Center et al. by *Matthew S. Hellman*, *David A. Strauss*, and *Sarah M. Konsky.*

*Christopher J. Hajec* filed a brief filed for the Immigration Reform Law Institute as *amicus curiae* urging reversal in No. 22–331 and affirmance in No. 22–23.

*Caleb J. Kruckenberg* and *Oliver J. Dunford* filed a brief for the Pacific Legal Foundation as *amicus curiae* in both cases.

obstruction of justice."   See 8 U. S. C. §§ 1101(a)(43)(S), 1227(a)(2)(A)(iii).   In both cases, an Immigration Judge ruled for the Department, as did the Board of Immigration Appeals.

Cordero-Garcia and Pugin petitioned for review in the relevant Courts of Appeals.   In Cordero-Garcia's case, the Ninth Circuit concluded, in pertinent part, that his state conviction for dissuading a witness from reporting a crime did not constitute an offense "relating to obstruction of justice" because the state offense did not require that an investigation or proceeding be *pending.*   44 F. 4th 1181, 1188–1189 (2022).   In Pugin's case, by contrast, the Fourth Circuit concluded that his state conviction for accessory after the fact constituted an offense "relating to obstruction of justice" even if the state offense did not require that an investigation or proceeding be pending.   19 F. 4th 437, 450 (2021); see also *Silva* v. *Garland,* 27 F. 4th 95, 98 (CA1 2022).

This Court granted certiorari to resolve the conflict in the Courts of Appeals.   598 U. S. —— (2023).

## II

Under the Immigration and Nationality Act, noncitizens convicted of an "aggravated felony" are removable from the United States.   8 U. S. C. § 1227(a)(2)(A)(iii).   The Act defines "aggravated felony" to cover a broad range of federal and state crimes.   See § 1101(a)(43).

In 1996, Congress passed and President Clinton signed legislation that expanded the definition of "aggravated felony" to include offenses "relating to obstruction of justice, perjury or subornation of perjury, or bribery of a witness, for which the term of imprisonment is at least one year." § 1101(a)(43)(S); 110 Stat. 1278; *id.,* at 3009–628.

This Court has generally used the "categorical approach" to determine whether a prior conviction qualifies as an "aggravated felony" under § 1101(a)(43).   *Esquivel-Quintana* v. *Sessions,* 581 U. S. 385, 389 (2017); *Moncrieffe* v. *Holder,* 569 U. S. 184, 190 (2013).   Under that approach, courts look to

"the elements of the statute of conviction, not to the facts of each defendant's conduct." *Taylor* v. *United States*, 495 U. S. 575, 601 (1990). The Court's role here is not to fashion a separate federal obstruction offense, but rather to determine which federal or state offenses "relat[e] to obstruction of justice."

The question in this case is whether an offense "relat[es] to obstruction of justice" under § 1101(a)(43)(S) even if the offense does not require that an investigation or proceeding be *pending.* Dictionary definitions, federal laws, state laws, and the Model Penal Code show that the answer is yes: An offense "relat[es] to obstruction of justice" even if the offense does not require that an investigation or proceeding be pending.

To begin, dictionaries from the time of § 1101(a)(43)(S)'s enactment in 1996 demonstrate that obstruction of justice generally does not require a pending investigation or proceeding. To take an illustrative formulation, obstruction of justice covers "the crime or act of willfully interfering with the process of justice and law," including "by influencing, threatening, harming, or impeding a witness, potential witness, juror, or judicial or legal officer or by furnishing false information in or otherwise impeding an investigation or legal process." Merriam-Webster's Dictionary of Law 337 (1996). The offense "captures every willful act of corruption, intimidation, or force that tends somehow to impair the machinery of the civil or criminal law." B. Garner, A Dictionary of Modern Legal Usage 611 (2d ed. 1995); see also Black's Law Dictionary 1077 (6th ed. 1990) ("obstructing the administration of justice in any way"); cf. *Esquivel-Quintana*, 581 U. S., at 391–392 (relying on same dictionaries to interpret a different offense in § 1101(a)(43)).

Notably missing from those dictionary definitions is a requirement that an investigation or proceeding be pending. The dictionaries demonstrate that obstruction of justice *includes* offenses where an investigation or proceeding is pend-

ing, but is not *limited to* offenses where an investigation or proceeding is pending.

In accord with the dictionary definitions, Title 18 of the U. S. Code has long proscribed various obstruction offenses that do not require a pending investigation or proceeding. Entitled "Obstruction of Justice," Chapter 73 of Title 18 houses many such offenses. For example, the federal witness tampering statute covers various offenses, such as killing or threatening a witness with an intent to prevent the person from testifying at an official proceeding. See 18 U. S. C. §§ 1512(a)(1)(A), (b)(1). That statute provides that "an official proceeding need not be pending or about to be instituted at the time of the offense." § 1512(f)(1). Likewise, § 1519 forbids assorted means of destroying, altering, or falsifying records with an intent to obstruct certain investigations or proceedings. That provision covers acts intended to impede a federal investigation or proceeding, "including one not even on the verge of commencement." *Yates* v. *United States*, 574 U. S. 528, 547 (2015) (plurality opinion); see also 18 U. S. C. § 1518 (proscribing acts to obstruct the communication of certain information to criminal investigators).[1]

The Solicitor General explains that many state obstruction offenses as of 1996 similarly did not require that an investigation or proceeding be pending. See, *e. g.*, Fla. Stat. § 914.22(3)(a) (1997); N. D. Cent. Code Ann. § 12.1–09–01(3)(c) (1997); *State* v. *O'Neill*, 165 Vt. 270, 682 A. 2d 943 (1996); Brief for Attorney General 36–43 (collecting statutes); see

---

[1] To be sure, one of those offenses—18 U. S. C. § 1519—was enacted after the passage of § 1101(a)(43)(S) in its current form in 1996. But § 1519, too, reflects the longstanding ordinary understanding of obstruction of justice—and no one here suggests that the ordinary understanding in the years after 1996 somehow differed from the ordinary understanding in 1996. See *Branch* v. *Smith*, 538 U. S. 254, 281 (2003) (plurality opinion of Scalia, J.) ("the most rudimentary rule of statutory construction" is "that courts do not interpret statutes in isolation, but in the context of the *corpus juris* of which they are a part, including later-enacted statutes").

also *Commonwealth* v. *Berry*, 141 Ky. 477, 481, 133 S. W. 212, 213 (1911); cf. *Esquivel-Quintana*, 581 U. S., at 395–397 (looking to state statutes). Some States did not label the relevant offenses as "obstruction of justice," but instead labeled the offenses with a more precise term for the particular category of obstruction at issue, such as witness tampering. But Congress accounted for the variations in labels by crafting the relevant definition in §1101(a)(43)(S) to cover offenses "*relating to* obstruction of justice," not just offenses labeled as "obstruction of justice." In any event, the terminology that States use to categorize criminal offenses is not dispositive because our inquiry here does not turn on "technical definitions and labels under state law." *Taylor*, 495 U. S., at 590.

For obstruction offenses, the Model Penal Code also generally does not require that an investigation or proceeding be pending. See generally ALI, Model Penal Code §240.0(4), p. 3 (1980) ("'official proceeding[s]'" include those which "may be heard"). For witness tampering, for example, the Model Penal Code focuses on an actor's intent to tamper with a witness, not whether an investigation or proceeding is pending. See *id.*, §241.6, Comment 2, at 166–167 ("What is important is not that the actor believe that an official proceeding or investigation will begin within a certain span of time but rather that he recognize that his conduct threatens obstruction of justice").

That extensive body of authority—dictionaries, federal laws, state laws, and the Model Penal Code—reflects common sense. Individuals can obstruct the process of justice even when an investigation or proceeding is not pending. For example, a murderer may threaten to kill a witness if the witness reports information to the police. Such an act is no less obstructive merely because the government has yet to catch on and begin an investigation. As the Solicitor General persuasively states, one can obstruct the wheels of justice even before the wheels have begun to move; indeed, obstruction of justice is often "most effective" when it pre-

vents "an investigation or proceeding from commencing in the first place." Brief for Attorney General 15.

Importantly, if an offense "relating to obstruction of justice" under §1101(a)(43)(S) required that an investigation or proceeding be pending, then many common obstruction offenses would not qualify as aggravated felonies under that provision. We decline to interpret §1101(a)(43)(S) to *exclude* numerous heartland obstruction offenses. "We should not lightly conclude that Congress enacted a self-defeating statute." *Quarles* v. *United States*, 587 U. S. ––––, –––– (2019); see also, *e. g.*, *Stokeling* v. *United States*, 586 U. S. ––––, –––– – –––– (2019); *Esquivel-Quintana*, 581 U. S., at 395; *Voisine* v. *United States*, 579 U. S. 686, 695–696 (2016).

One final point bears emphasis: To the extent any doubt remains about whether §1101(a)(43)(S) requires that an investigation or proceeding be pending, the phrase "*relating to* obstruction of justice" resolves the doubt. Cf. *Mellouli* v. *Lynch*, 575 U. S. 798, 811–812, n. 11 (2015). The phrase "relating to" ensures that this statute covers offenses that have "a connection with" obstruction of justice—which surely covers common obstruction offenses that can occur when an investigation or proceeding is not pending. *Coventry Health Care of Mo., Inc.* v. *Nevils*, 581 U. S. 87, 96 (2017) (internal quotation marks omitted). By contrast, in defining certain other aggravated felonies in this statute, Congress did not employ the broad phrase "relating to." See, *e. g.*, 8 U. S. C. §1101(a)(43)(A) ("murder, rape, or sexual abuse of a minor").

For all of those reasons, an offense "relating to obstruction of justice" under §1101(a)(43)(S) does not require that an investigation or proceeding be pending.[2]

---

[2] As interpreted by this Court, a few obstruction statutes require that an investigation or proceeding be reasonably foreseeable. See, *e. g.*, *Marinello* v. *United States*, 584 U. S. ––––, –––– (2018). Those decisions interpreted specific statutory language and did not rule that obstruction offenses in general have a foreseeability requirement (which would have been incorrect, in any event). Moreover, the Solicitor General explains

### III

Pugin and Cordero-Garcia offer four main arguments in response. None is persuasive.

*First*, Pugin and Cordero-Garcia point to 18 U. S. C. § 1503(a), which among other things prohibits persons from endeavoring "to influence, obstruct, or impede" the "due administration of justice." According to Pugin and Cordero-Garcia, that specific prohibition requires that an investigation or proceeding be pending. Cf. *Pettibone* v. *United States*, 148 U. S. 197, 207 (1893). But even if they are correct about that point, § 1503(a) is only one obstruction offense among the many obstruction offenses in Title 18. And many federal obstruction offenses—like many state obstruction offenses—proscribe obstruction when an investigation or proceeding is not pending. Moreover, if Congress wanted to define offenses "relating to obstruction of justice" to have the same coverage as § 1503(a), Congress knew how to do so: Congress could have cross-referenced § 1503(a) in § 1101(a)(43)(S) in the same way that Congress cross-referenced numerous other statutes in § 1101(a)(43). See, *e. g.*, §§ 1101(a)(43)(B)–(F). But Congress included no such cross-reference to § 1503(a) in § 1101(a)(43)(S).

*Second*, Pugin and Cordero-Garcia cite a few authorities from the 1700s and 1800s and assert that obstruction of justice historically required that an investigation or proceeding

_____

that offenses "relating to obstruction of justice" require an intent to interfere with the legal process. See Tr. of Oral Arg. 6–8, 18, 116–117; Brief for Attorney General 23. That *mens rea* requirement targets the same basic overbreadth concern as a foreseeability requirement and ensures that § 1101(a)(43)(S) will not sweep in offenses that are not properly understood as offenses "relating to obstruction of justice." For example, the Solicitor General concedes that federal misprision of felony is not an offense "relating to obstruction of justice" because, in the Government's view, the crime does not require an intent to interfere with the legal process. See 18 U. S. C. § 4; Reply Brief for Attorney General 26–27. In short, we see no justification for engrafting a separate foreseeability requirement onto the broad and general language of § 1101(a)(43)(S).

be pending.   But the historical record cited by Pugin and Cordero-Garcia does not back up their broad claim.   See, *e. g.*, 4 W. Blackstone, Commentaries on the Laws of England 126 (1769) (explaining without qualification that endeavoring "to dissuade a witness from giving evidence" was an "imped-imen[t] of justice").   More to the point, as we have explained at length, the widespread and contemporary understanding of obstruction of justice at the time Congress enacted §1101(a)(43)(S) in 1996 did not require that an investigation or proceeding be pending.   Cf. *Taylor* v. *United States*, 495 U. S. 575, 593 (1990).

*Third*, Pugin and Cordero-Garcia argue that offenses "re-lating to obstruction of justice" require a pending investiga-tion or proceeding; otherwise, they maintain that those of-fenses would be redundant with other offenses covered by §1101(a)(43)(S)—in particular, offenses "relating to . . . per-jury or subornation of perjury, or bribery of a witness." But Pugin and Cordero-Garcia fail to explain how requiring a pending investigation or proceeding for obstruction offenses would resolve the claimed redundancies with perjury or brib-ery offenses.   After all, perjury and bribery offenses often "relat[e] to obstruction of justice."   In any event, "redundan-cies are common in statutory drafting—sometimes in a con-gressional effort to be doubly sure, sometimes because of congressional inadvertence or lack of foresight, or sometimes simply because of the shortcomings of human communica-tion."   *Barton* v. *Barr*, 590 U. S. ——, —— (2020).   As a re-sult, "the better overall reading of the statute" sometimes "contains some redundancy."   *Ibid.*; *Atlantic Richfield Co.* v. *Christian*, 590 U. S. ——, ——, n. 5 (2020); *Rimini Street, Inc.* v. *Oracle USA, Inc.*, 586 U. S. ——, —— (2019).   Section 1101(a)(43) illustrates the point: Congress listed a large num-ber of offenses that would qualify as aggravated felonies, likely to avoid unintended gaps.   So it is not surprising to find some overlap.   To take one example, the definition of "aggravated felony" covers "murder, rape, or sexual abuse

of a minor" and separately covers "crime[s] of violence."
§§ 1101(a)(43)(A), (F).[3]

*Fourth*, Pugin and Cordero-Garcia invoke the rule of lenity. But even assuming that the rule of lenity can be invoked in this particular civil immigration context, the rule applies only if "after seizing everything from which aid can be derived," there remains "grievous ambiguity." *Ocasio* v. *United States*, 578 U. S. 282, 295, n. 8 (2016) (internal quotation marks omitted). Here, applying the traditional tools of statutory interpretation, we have concluded that an offense "relating to obstruction of justice" does not require that an investigation or proceeding be pending. So we have no basis for resorting to the rule of lenity. See, *e. g.*, *Shaw* v. *United States*, 580 U. S. 63, 71 (2016); *Salman* v. *United States*, 580 U. S. 39, 51 (2016); *Abramski* v. *United States*, 573 U. S. 169, 188, n. 10 (2014); cf. *Kawashima* v. *Holder*, 565 U. S. 478, 489 (2012).

\* \* \*

In sum, we conclude that an offense "relating to obstruction of justice" under § 1101(a)(43)(S) does not require that an investigation or proceeding be pending. We therefore disagree with the argument raised by Pugin and Cordero-Garcia for excluding their obstruction offenses from the broad coverage of § 1101(a)(43)(S). We affirm the judgment of the U. S. Court of Appeals for the Fourth Circuit. We reverse the judgment of the U. S. Court of Appeals for the

---

[3] The same point applies to § 1101(a)(15)(U)(iii), which lists both "obstruction of justice" and "witness tampering." Neither Pugin nor Cordero-Garcia cites that provision—presumably because the provision appears in a different part of the statute and contains different language. Moreover, Congress took the same belt-and-suspenders approach in § 1101(a)(15)(U)(iii) that it did in § 1101(a)(43). See § 1101(a)(15)(U)(iii) (covering among other things "being held hostage; peonage; involuntary servitude; slave trade; kidnapping; abduction; unlawful criminal restraint; false imprisonment" as well as "any similar activity in violation of Federal, State, or local criminal law").

Ninth Circuit and remand the case for further proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE JACKSON, concurring.

I agree with the Court that the Ninth Circuit wrongly embraced a pending-proceeding requirement when it assessed what types of prior offenses qualify as "offense[s] relating to obstruction of justice" under 8 U. S. C. § 1101(a) (43)(S), for purposes of determining the "aggravated felon-[ies]" that render noncitizens deportable, § 1227(a)(2)(A)(iii). This means, of course, that I also agree with the Court's conclusion that the Fourth Circuit rightly rejected any such pending-proceeding requirement.

I write separately to highlight one (possibly sufficient) reason why a predicate offense need not have a nexus to a pending or ongoing investigation or judicial proceeding in order to qualify as "an offense relating to obstruction of justice" within the meaning of this immigration statute. The reason is that, when Congress inserted the phrase "offense relating to obstruction of justice" into § 1101(a)(43)(S), it might well have been referencing a specific and previously designated category of offenses—the offenses that are grouped together in Chapter 73 of Title 18 of the U. S. Code, under the heading "Obstruction of Justice." 62 Stat. 769, codified at 18 U. S. C. § 1501 *et seq.* And not all of the offenses that are addressed in Chapter 73 contain a pending-proceeding requirement.

\*      \*      \*

What counts as "an offense relating to obstruction of justice" within the meaning of § 1101(a)(43)(S) is nothing more, or less, than what Congress intended that phrase to mean when it enacted that statute. The Immigration and Nationality Act (INA) "does not expressly define" the phrase, so we apply the "normal tools of statutory interpretation" to

"'see what Congress probably meant'" by it. *Esquivel-Quintana* v. *Sessions*, 581 U. S. 385, 391 (2017) (quoting *Lopez* v. *Gonzales*, 549 U. S. 47, 53 (2006)). In my view, our job in this regard is a limited one: We are called upon to understand and implement whatever Congress meant by that unadorned phrase.

When Congress selected the words "offense relating to obstruction of justice" and inserted them into the INA in 1996, 110 Stat. 1277–1278, Congress's longest standing and most significant use of the phrase "obstruction of justice" in the Statutes at Large was its description of Chapter 73 of Title 18 as concerning "obstruction of justice." 62 Stat. 769; see also 104 Stat. 4861 (describing Chapter 73 as "relating to obstruction of justice" when adding an offense to that Chapter in 1990). To me, this is a powerful contextual clue that Congress may have simply—and solely—been drawing on its own existing understanding of which particular offenses are properly characterized as such. Accord, *Flores* v. *Attorney General*, 856 F. 3d 280, 287–289 (CA3 2017) (refusing to "look beyond Chapter 73" to "determine whether an alien's prior offense 'relat[es] to obstruction of justice'" because § 1101(a)(43)(S)'s "text . . . indicates Congress's intention to reference Chapter 73"). In deciding the cases before us, I would not want to rule out (even inadvertently) the possibility that Chapter 73 is Congress's actual benchmark with respect to what qualifies as an "offense relating to obstruction of justice" for § 1101(a)(43)(S) purposes, rather than just a mere clue to some platonic, judicially divined meaning of Congress's chosen words.

I believe that hewing closely to Congress's will in this regard is especially important where (as here) making the determination of which offenses qualify implicates the "drastic" deportation sanction. *Jordan* v. *De George*, 341 U. S. 223, 231 (1951). In our constitutional system, the Legislature makes legal policy judgments regarding the particular cir-

cumstances that trigger the consequences that are associated with criminal convictions. Accord, *United States* v. *Lanier*, 520 U. S. 259, 265, and n. 5 (1997). And it seems at least plausible that Congress's description of certain "aggravated felon[ies]," § 1227(a)(2)(A)(iii), as "offense[s] relating to obstruction of justice," § 1101(a)(43)(S), may embody its judgment to peg that subset of aggravated felonies to Chapter 73, not an intent to leave the category without form for future judicial refinement. Of course, *if* Congress has already thus decided which obstruction-related convictions so trigger the INA's aggravated-felony provision, this Court need not, and indeed should not, cobble together a "generic" offense definition from nonstatutory sources (which risks sweeping in offenses that Congress did not mean to capture).

Here, the Court correctly emphasizes Chapter 73's importance in the course of analyzing whether a possible predicate offense must have a nexus to a pending proceeding in order to qualify as an aggravated felony. *Ante*, at 605. But these parties have not fully ventilated the arguments for and against the possibility that Chapter 73 might define (in substance) the universe of offenses that "relat[e] to obstruction of justice," § 1101(a)(43)(S), as Congress meant that phrase to be interpreted. Nor would running that issue to ground here change the outcome.* As the Court notes, multiple Chapter 73 offenses require no pending proceeding. § 1512(f); see also 102 Stat. 4397–4398 (1988 Congress describing an amendment to § 1512 as an "obstruction of justice amendmen[t]" (boldface deleted)). That suffices to resolve the question before us even under a Chapter 73-focused approach. The issue of whether such an approach best tracks Congress's intent can be reserved for future consideration in a case where the parties joust in earnest on the question.

---

*Before this Court, Pugin did not root his arguments in the Chapter 73-focused paradigm that I sketch here. I agree with the Court that the arguments he *did* make do not require reversing the Fourth Circuit.

JUSTICE SOTOMAYOR, with whom JUSTICE GORSUCH joins, and with whom JUSTICE KAGAN joins as to all but Part III, dissenting.

From early American laws, to dictionaries, to modern federal and state obstruction statutes, interference with an ongoing investigation or proceeding is at the core of what it means to be "an offense relating to obstruction of justice," 8 U. S. C. §1101(a)(43)(S). The Court circumvents this ample evidence only by casting a wide net and then throwing back all but the bycatch. That approach "turns the categorical approach on its head," *Esquivel-Quintana* v. *Sessions*, 581 U. S. 385, 393 (2017), and subverts the commonly understood meaning of "obstruction of justice" when Congress enacted §1101(a)(43)(S) in 1996. I respectfully dissent.

I

The Immigration and Nationality Act (INA) defines "aggravated felony" by enumerating a long list of offenses. §1101(a)(43). Some are federal criminal offenses, but others are undefined generic offenses, such as "burglary," §1101(a)(43)(G), and "obstruction of justice," §1101(a)(43)(S), which is relevant here.

To assess whether someone's conviction is covered by a generic offense, our precedents dictate that courts use the "categorical approach." *Esquivel-Quintana*, 581 U. S., at 389. That approach disregards facts about the conviction and instead "compare[s] the elements of the statute forming the basis of the defendant's conviction with the elements of the 'generic' crime—*i. e.*, the offense as commonly understood." *Descamps* v. *United States*, 570 U. S. 254, 257 (2013). If the elements of the underlying crime of conviction are narrower than or the same as the elements of the generic offense, then there is a "categorical match," *Moncrieffe* v. *Holder*, 569 U. S. 184, 190 (2013), and the underlying offense is an aggravated felony. If there is no categorical match,

then the conviction is not an aggravated felony, no matter the underlying facts.

Before a court can engage in this categorical comparison, however, it must discern the "basic elements" of the relevant "generic" offense. *Taylor* v. *United States*, 495 U. S. 575, 599 (1990). Courts accomplish this task by looking for "evidence about the generic meaning" of the offense at the time of the statute's enactment. *Esquivel-Quintana*, 581 U. S., at 395. This means looking for the "generally accepted contemporary meaning" of the generic offense, while setting aside more unusual "nongeneric" variants that are "defin[ed] . . . more broadly." *Taylor*, 495 U. S., at 596, 599. In *Taylor*, for example, this Court concluded, after surveying various sources of meaning, that for purposes of 18 U. S. C. § 924(e), "generic burglary" encompasses any crime "having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." 495 U. S., at 599. In reaching that conclusion, the Court purposefully excluded burglary convictions in a handful of States that "defin[ed] burglary more broadly" by "eliminating the requirement that the entry be unlawful, or by including places, such as automobiles and vending machines, other than buildings." *Ibid.* Expanding the definition to include those statutes would have strayed too far from "the generic definition of bribery . . . intended by Congress." *Id.*, at 595 (internal quotation marks omitted).

The question presented in these cases—whether "an offense relating to obstruction of justice," 8 U. S. C. § 1101(a)(43)(S), necessarily involves a pending investigation or proceeding—is a question about the "basic elements" of "generic" obstruction of justice. *Taylor*, 495 U. S., at 599. That is, it is a question about how obstruction of justice was "commonly understood," *Descamps*, 570 U. S., at 257, in 1996 when Congress enacted § 1101(a)(43)(S). Answering that question requires focusing on the core, "generally accepted

contemporary meaning," *Taylor*, 495 U. S., at 596, of obstruction of justice, rather than on more unusual "nongeneric" variants that are "define[d] . . . more broadly," *id.*, at 599.

The Court loses sight of this fundamental point. Instead of focusing on whether a pending investigation or proceeding is part of the heartland of obstruction of justice, it wanders off into an array of obstruction-adjacent federal and state laws that do not require a pending investigation or proceeding. The Court then announces that those offenses are core obstruction of justice, even though the evidence it relies on, taken as a whole, reveals they are not. The result is predictable. By defining offenses that do not require a pending investigation or proceeding as core obstruction of justice, the majority forces through the conclusion that a pending investigation or proceeding is not required to qualify as generic obstruction of justice.

A reexamination of the sources relied upon by the majority, with the appropriate focus on discerning the trunk of obstruction of justice, rather than its various branches or offshoots, leads to the opposite result: To qualify as "an offense relating to obstruction of justice" under § 1101(a)(43)(S), a predicate offense must require a pending investigation or proceeding.

## A

As an initial matter, the majority glosses over the critical fact that "obstruction of justice" was an established term of art at the time of § 1101(a)(43)(S)'s enactment in 1996. This is a major first misstep because "[w]here Congress employs a term of art obviously transplanted from another legal source, it brings the old soil with it." *George* v. *McDonough*, 596 U. S. 740, 746 (2022) (internal quotation marks omitted).

From the "old soil" until today, "obstruction of justice" has required a pending investigation or proceeding. In 1831, Congress forbade efforts "to influence, intimidate, or impede any juror, witness, or officer, *in any court of the United States*, in the discharge of his duty" or "to obstruct or im-

pede, *the due administration of justice therein.*"  Act of Mar. 2, 1831, ch. 99, 4 Stat. 488 (emphasis added).  This provision, which became §5399 of the Revised Statutes, see Rev. Stat., Title 70, ch. 4, §5399 (1875), laid "the foundation for the modern statutory incarnation of the offense of obstruction of justice."  E. Murphy, Manufacturing Crime: Process, Pretext, and Criminal Justice, 97 Geo. L. J. 1435, 1473 (2009).

In *Pettibone* v. *United States*, 148 U. S. 197 (1893), this Court confirmed that §5399 required a pending proceeding. After describing the law as criminalizing "obstruction of the due administration of justice in any court of the United States," the Court explained that "such obstruction can only arise when justice is being administered."  *Id.*, at 207. "Unless that fact exists, the statutory offence cannot be committed."  *Ibid.*  The Court thus tied obstruction of justice under §5399 to "the pendency of proceedings in the United States court, or the progress of the administration of justice therein."  *Id.*, at 205.

Section 5399 is the predecessor of the modern omnibus or catchall obstruction of justice clause, which is codified at 18 U. S. C. §1503, and which prohibits endeavoring "to influence, obstruct, or impede, the due administration of justice." In recognition of this through line, this Court held, just a year before the enactment of §1101(a)(43)(S), that "a person lacking knowledge of a pending proceeding" cannot be convicted under §1503.  *United States* v. *Aguilar*, 515 U. S. 593, 599 (1995) (citing *Pettibone*, 148 U. S., at 207).  Underscoring this point in his partial concurrence, Justice Scalia explained that "an endeavor to obstruct proceedings that did not exist would not violate the statute" because "obstruction can only arise when justice is being administered."  515 U. S., at 610, n. 1 (alteration and internal quotation marks omitted).

Congress was aware of this settled interpretation of §1503 when it added "obstruction of justice" to the INA's list of aggravated felonies.  See *Guerrero-Lasprilla* v. *Barr*, 589 U. S. ——, —— (2020) ("We normally assume that Congress is aware of relevant judicial precedent when it enacts a new

statute" (internal quotation marks omitted)). In fact, by 1996 Congress had already demonstrated that "relating to obstruction of justice" was understood to capture § 1503. Enacted in 1970, the Racketeer Influenced and Corrupt Organizations Act (RICO) specifically lists as a predicate offense "section 1503 (relating to obstruction of justice)." 18 U. S. C. § 1961(1). Moreover, this language, just like the language at § 1101(a)(43)(S), serves the purpose of identifying one of a long list of underlying offenses to which an overarching statute applies. Thus, by 1996, Congress had used the same phrase for the same purpose to refer to § 1503. In fact, the INA's list of aggravated felonies explicitly cross-references RICO, suggesting Congress was well aware of the parallel. See § 1101(a)(43)(J) (INA listing RICO violation as an aggravated felony).[1]

In short, in searching for the heartland of obstruction of justice, the omnibus clause of § 1503 and the history from which it is derived are invaluable touchstones. Neither countenances an obstruction of justice offense separate from a pending investigation or proceeding.[2]

───────────

[1] The majority argues that if Congress had wanted offenses "relating to obstruction of justice" to "have the same coverage as § 1503(a)," then Congress could have just "cross-referenced § 1503(a) in § 1101(a)(43)(S)." *Ante*, at 608. This argument misses the point entirely. If Congress had done that, then only persons convicted under § 1503 would qualify. Congress's use of the generic "obstruction of justice," however, clearly signals that Congress wanted other state and federal offenses sharing the same basic elements to be included as well. Section 1503 is a strong indicator of the generic meaning of "obstruction of justice" in § 1101(a)(43)(S), not its equivalent.

[2] Although the Court quotes Blackstone's statement that " 'dissuad[ing] a witness from giving evidence' " was an " 'impedimen[t] of justice' " in support of its position, *ante*, at 609, Blackstone actually supports this dissent. The Court ignores that in historical usage "giving evidence" meant "testifying" at a proceeding. See, *e. g.*, 3 W. Blackstone, Commentaries on the Laws of England 305 (1768) ("[E]very defence, which cannot be thus specially pleaded, may be given in evidence, upon the general issue at the trial"); 2 M. Hale, History of the Pleas of the Crown 280 (1736) ("If a reward be promised to a person for giving his evidence before he gives it,

B

Even setting this crucial historical evidence aside, and proceeding as the Court does, by looking to dictionary definitions, chapter 73 of the Federal Criminal Code, state statutes, and the Model Penal Code, the same result emerges: Core obstruction of justice requires a pending investigation or proceeding.

1

Begin with the central dictionary definition upon which the Court relies. It defines obstruction of justice as "the crime or act of willfully *interfering with the process of justice and law* esp. by influencing, threatening, harming, or impeding a witness, potential witness, juror, or judicial or legal officer or by furnishing false information *in or otherwise impeding an investigation or legal process*." Merriam-Webster's Dictionary of Law 337 (1996) (emphasis added).

While the Court claims that this definition omits any requirement of a pending investigation or proceeding, *ante*, at 604, the two italicized phrases say otherwise. "[I]nterference" means the "act of meddling in or hampering an activity or process," Webster's Third New International Dictionary 1178 (1993), while "impede" means "to interfere with or get in the way of the progress of" something or someone, *id.*, at 1132. The definition is clear that the process that is meddled in, or interfered with, is the "process of justice and law" or "an investigation or legal process."[3]

_____

this, if proved, disables his testimony"). The majority also ignores that the Blackstone passage is discussing "[c]ontempts against the king's . . . *courts of justice*." 4 Blackstone, Commentaries, at 124 (1769). This context confirms Blackstone is referring to impeding a witness from testifying at a proceeding, because otherwise it would not be a contempt against the king's courts.

[3] While it is possible to talk about interfering with or impeding a process before it has even begun, those phrases more naturally connote an effect on a process that is ongoing. For example, talk of interfering in a hiring process strongly suggests that hiring-related activities are already under-

For the same reason, the majority is too hasty when it asserts that the definition encompasses acts separate from a pending investigation or proceeding. That definition ends with the phrase "in . . . an investigation or legal process." Under the series-qualifier canon, that phrase is best read to modify all listed verbs, especially because the definition lists each action as an example of "the crime or act of willfully interfering with the process of justice and law." See *Facebook, Inc.* v. *Duguid*, 592 U. S. 395, 402 (2021) ("[W]hen there is a straightforward, parallel construction that involves all nouns or verbs in a series, a modifier at the end of the list normally applies to the entire series" (internal quotation marks omitted)). Thus, far from favoring the majority's view, the definition most naturally supports the conclusion that interference with a pending investigation or proceeding is an element of generic obstruction of justice.

The other dictionary definitions upon which the Court relies similarly indicate the need for a pending investigation or proceeding. The majority notes that Black's Law Dictionary defines obstruction of justice to cover "'obstructing the administration of justice in any way,'" *ante*, at 604, but overlooks the fact that "administration of justice," both historically and currently, refers to court proceedings. See, *e. g.*, 1 J. Kent, Commentaries on American Law *290 ("[T]he judiciary power is intrusted with the administration of justice"); Black's Law Dictionary 53 (10th ed. 2014) (defining "due administration of justice" as "[t]he proper functioning and integrity of a court or other tribunal and the proceedings before it"). Similarly, the full definition from A Dictionary of Modern Legal Usage mentions "interference with the orderly administration of law." B. Garner, p. 611 (2d ed. 1995). The cited definitions thus all weigh against the majority's

---

way. Certainly where an upcoming hiring is not even foreseeable, it would be unusual to talk of such inference. Yet, the majority does not require even a foreseeable investigation or proceeding in order for there to be obstruction of justice. See *ante*, at 607, n. 2.

sweeping view, and in favor of the view that obstruction of justice "can only arise when justice is being administered." *Pettibone*, 148 U. S., at 207.

2

The federal offenses listed in chapter 73 of Title 18, which is entitled "Obstruction of Justice," provide further support for the conclusion that core obstruction of justice requires the administration of justice.

When Congress codified chapter 73 in 1948, the chapter contained six provisions, each of which requires a connection to a pending proceeding or investigation.  See Act of June 25, 1948, §§ 1501–1506, 62 Stat. 769–770.  The central provision is § 1503, with its omnibus or catchall prohibition against endeavoring "to influence, obstruct, or impede, the due administration of justice."   As already explained, *supra*, at 617, it is undisputed that § 1503's omnibus clause requires a pending proceeding.  The same is true for the other five provisions, all of which either refer to ongoing legal processes or cover conduct that can arise only during legal proceedings.[4]

By the time Congress passed 8 U. S. C. § 1101(a)(43)(S) in 1996, Congress had added nine narrower, more specific offenses to the six original offenses (§§ 1501–1506) in chapter 73.  See 18 U. S. C. §§ 1507–1513, 1516–1517.[5]  While it is less clear that those specialized provisions fall within the

---

[4] The five other original chapter 73 offenses are § 1501 ("Assault on process server"); § 1502 ("Resistance to extradition agent"); § 1504 ("Influencing juror by writing"); § 1505 ("Influencing or injuring witness before agencies and committees"); and § 1506 ("Theft or alteration of record or process; false bail").   These provisions remain in chapter 73 to this day, with only modest revisions that do not change the need for a pending investigation or proceeding.

[5] § 31(a), 64 Stat. 1018 (adding § 1507 in 1950); § 1, 70 Stat. 935 (adding § 1508 in 1956); § 101, 74 Stat. 86 (adding § 1509 in 1960); Pub. L. 90–123, § 1(a), 81 Stat. 362 (adding § 1510 in 1967); § 802(a), 84 Stat. 936 (adding § 1511 in 1970); § 4(a), 96 Stat. 1249 (adding § 1512 in 1982); *id.*, at 1250 (adding § 1513 in 1982); § 7078(a), 102 Stat. 4406 (adding § 1516 in 1988); § 2503(a), 104 Stat. 4861 (adding § 1517 in 1990).

heartland of obstruction of justice, even the vast majority of them require a connection to a proceeding or investigation.[6] See § 1507 ("picket[ing] or parad[ing]" with the intent to interfere with "the administration of justice"); § 1508 (listening to or recording jury "deliberat[ions] or voting"); § 1510 (interference with reports of information "to a criminal investigator"); § 1516 (interfering with a "Federal auditor in the performance of official duties"); § 1509 (interfering with "due exercise of rights" under a court order); § 1513 (retaliating against a witness for participating in "an official proceeding").

The primary outlier amongst the more recent additions to chapter 73 is § 1512, which criminalizes tampering with a witness, victim, or informant. As the majority notes, that provision provides that "[f]or purposes of this section . . . an official proceeding need not be pending or about to be instituted at the time of the offense." § 1512(f)(1). Instead of favoring the majority's conclusion, however, § 1512 is the exception that proves the rule. There would be no need to clarify that the provision applies absent a pending proceeding unless there were an established background understanding that obstruction of justice requires such a proceeding.[7] Because the question at hand concerns the meaning of heartland obstruction of justice, excluding "nongeneric"

---

[6] The two exceptions are §§ 1511 and 1512. Section 1511 is a specialized provision, enacted as part of the Organized Crime Control Act of 1970, § 802, 84 Stat. 936, which prohibits "conspir[ing] to obstruct the enforcement of the criminal laws of a State . . . with the intent to facilitate an illegal gambling business." 18 U. S. C. § 1511(a). Given that § 1511 is a specialized conspiracy provision intended to "discourage organized crime's corruption of state and local officials for the purpose of facilitating gambling enterprises," *Iannelli* v. *United States*, 420 U. S. 770, 788 (1975), it has no bearing on core obstruction of justice. Section 1512 is discussed *infra*, at 622–623, and n. 6.

[7] In a testament to the gravitational force of the weighty background rule that a pending proceeding is generally required, this Court has interpreted § 1512 to at least require a foreseeable proceeding. See *Arthur Andersen LLP* v. *United States*, 544 U. S. 696, 707–708 (2005).

variants "defin[ed] . . . more broadly," *Taylor*, 495 U. S., at 599, what matters here is the general rule, not a singular exception to it. To use a lighthearted example, it is clear that the "generic" meaning of "mammal" includes giving birth to live young, even though the platypus is an exception to that rule. Section 1512 thus proves the opposite of what the majority takes it to prove.[8]

The Court instead reasons that because § 1512 does not require a pending investigation or proceeding, the answer to the question "Does generic obstruction of justice require a pending investigation or proceeding?" must be "No." That line of thinking, however, simply assumes that § 1512 falls within generic obstruction (it assumes the platypus is heartland mammalia). In so assuming, the Court loses sight of the task at hand, which is, again, to answer a question about the trunk of obstruction of justice, not more broadly defined offshoots. See *Descamps*, 570 U. S., at 257. All signs point toward treating § 1512 as just such an offshoot, at least insofar as it explicitly chooses to dispose with the requirement that a proceeding "be pending or about to be instituted at the time of the offense." § 1512(f)(1).

---

[8] The majority also mentions § 1518 (Obstruction of criminal investigations of health care offenses) and § 1519 (Destruction, alteration, or falsification of records in federal investigations and bankruptcy), which were enacted after Congress passed § 1101(a)(43)(S). See § 245(a), 110 Stat. 2017 (adding § 1518 in 1996); § 802(a), 116 Stat. 800 (adding § 1519 in 2002). Both are highly "specialized" provisions concerned with "corporate fraud and financial audits." *Yates* v. *United States*, 574 U. S. 528, 541 (2015) (plurality opinion). Given that these later enacted offenses are specialized extensions of obstruction of justice, they are irrelevant to determining what Congress in 1996 understood as the generic meaning of "obstruction of justice" in § 1101(a)(43)(S). While the concurrence suggests that "obstruction of justice" is coextensive with chapter 73, *ante*, at 612 (opinion of JACKSON, J.), the concurrence (like the majority) does not engage with these issues regarding §§ 1518 and 1519, nor with the problems noted above about §§ 1511 and 1512, see *supra*, at 621, 622, n. 6, 623, even though all of these issues have been thoroughly ventilated in these cases. See Brief for Petitioner in No. 22–23, pp. 23–29; Brief for Respondent in No. 22–331, pp. 15–21; Brief for Attorney General 24–31.

3

The text of the INA itself confirms that Congress did not understand obstruction of justice to encompass all witness tampering. In the very same subsection of the INA at issue here, Congress expressly used the term "witness tampering" separately from "obstruction of justice." 8 U. S. C. § 1101(a)(15)(U)(iii). Specifically, in a set of provisions defining "U" nonimmigrant status,[9] Congress again enumerated a list of offenses, many of which overlap with the aggravated felonies in § 1101(a)(43). See § 1101(a)(15)(U)(iii); cf. §§ 1101(a)(43). Just as it did for aggravated felonies, Congress included "obstruction of justice" in the list. This time, however, Congress added witness tampering in addition to obstruction of justice by listing "witness tampering; obstruction of justice; [or] perjury" as distinct offenses. § 1101(a)(15)(U)(iii); cf. § 1101(a)(43)(S) ("obstruction of justice, perjury or subornation of perjury, or bribery of a witness").

The Court's broad interpretation of "obstruction of justice," which swallows up all witness tampering, cannot be reconciled with this statutory text. If, on the one hand, the Court applies the same broad meaning to "obstruction of justice" in § 1101(a)(15)(U)(iii), then "witness tampering" becomes redundant, in violation of the canon that statutes should be read "so as to avoid rendering superfluous any parts thereof." *Astoria Fed. Sav. & Loan Assn.* v. *Solimino*, 501 U. S. 104, 112 (1991). If, on the other hand, the Court attempts to avoid this problem by interpreting "obstruction of justice" differently across the two provisions, then it violates "the established canon of construction that similar language contained within the same section of a statute must be accorded a consistent meaning." *National*

---

[9] Persons eligible for "U" nonimmigrant status are victims of certain qualifying criminal activity who are helpful to officials investigating or prosecuting such activity. See 8 U. S. C. § 1101(a)(15)(U)(i).

*Credit Union Admin.* v. *First Nat. Bank & Trust Co.*, 522 U. S. 479, 501 (1998). Either way, the Court's interpretation fails.

Although § 1101(a)(43)(S) refers to "an offense relating to obstruction of justice," while § 1101(a)(15)(U)(iii) refers to "criminal activity . . . involving . . . obstruction of justice" "or any similar activity," these textual differences only reinforce that Congress understood "obstruction of justice" and "witness tampering" to have quite different ordinary meanings. Given that § 1101(a)(15)(U)(iii) covers not just "obstruction of justice" but "any similar activity," one must infer that Congress took witness tampering to be not only distinct from obstruction of justice, but distinct enough to need separate mention from "obstruction of justice" "or any similar activity."

Nor does it matter that § 1101(a)(15)(U) was added to the INA in 2000 as part of the Victims of Trafficking and Violence Protection Act. 114 Stat. 1534. On the contrary, the fact that Congress understood "obstruction of justice" to be distinct from "witness tampering" just four years after enacting § 1101(a)(43)(S) is good evidence Congress understood the same to be true in 1996, when it deemed "obstruction of justice" an aggravated felony under the INA. After all, "no one here suggests that the ordinary understanding in the years after 1996 somehow differed from the ordinary understanding in 1996." *Ante*, at 605, n. 1.

4

State law points to the same result as the other indicia of meaning examined thus far. State law is relevant because, in discerning the generic meaning of terms with common-law roots, the Court will often survey state statutes in effect at the time the federal statute in question was enacted. See *Taylor*, 495 U. S., at 598–599 (considering how "burglary" was understood "in the criminal codes of most States"). Here, when § 1101(a)(43)(S) was enacted in 1996, 13 States

and the District of Columbia had a crime deemed "obstruction of" or "obstructing" "justice." The majority of those state statutes (eight in total) required a connection to an investigation or proceeding that was pending, or at least reasonably foreseeable, while the remainder were ambiguous on the matter.[10] Thus, when § 1101(a)(43)(S) was added to the INA in 1996, obstruction of justice "'generally'" or "'typically'" required such a connection. *Id.*, at 598.

The majority avoids this conclusion only by, once again, adopting a circular approach. In analyzing state law, the majority looks exclusively to state witness tampering statutes, which it simply assumes are "state obstruction offenses." *Ante*, at 605. It then concludes that because many of those statutes do not require a pending investigation or proceeding, neither does obstruction of justice under the INA. *Ante*, at 606. As should be clear by now, that method gets the categorical approach backward; if the overarching federal category is assumed to include the state offenses in question, there will always be a categorical match. One cannot prove that all state witness tampering laws fall within the INA's "relating to obstruction of justice" simply by assuming that they do.[11]

---

[10] See Haw. Rev. Stat. § 710–1072.5 (1996) (connection required); La. Rev. Stat. Ann. § 14:130.1 (West 1996) (same); Md. Ann. Code, Art. 27, § 26 (1996) (same); Miss. Code Ann. § 97–9–55 (1996) (same); Va. Code Ann. § 18.2–460 (1996) (same); Vt. Stat. Ann., Tit. 13, § 3015 (1996) (same); W. Va. Code Ann. § 61–5–27 (1996) (same); Wis. Stat. § 946.65 (1996) (same); Ind. Code Ann. § 35–44–3–4 (ambiguous); Ohio Rev. Code Ann. § 2921.32 (1996) (same); Utah Code Ann. § 76–8–306 (1996) (same); D. C. Code § 22–722 (1996) (same); Ill. Comp. Stat., ch. 720, § 5/31–4 (1996) (same); Mont. Code Ann. § 45–7–303 (1996) (same).

[11] Moreover, even assuming state witness tampering statutes are relevant, it is noteworthy that in 1996 the vast majority of States (39 in total) categorized their witness tampering statutes as something other than "obstruction of justice." See, *e. g.*, Ala. Code § 13A–10–124 (1996) (categorized under "Offenses Against Public Administration"); Colo. Rev. Stat. § 18–8–707 (1996) (categorized under "Offenses—Governmental Operations"); Idaho Code Ann. § 18–2604 (1996) (categorized under "Evidence Falsified or Concealed and Witnesses Intimidated or Bribed"); see also

The majority also relies on the Model Penal Code (MPC). *Ante*, at 606. Although the MPC sometimes can provide supplemental evidence of generic meaning, see *Taylor*, 495 U. S., at 598, n. 8, it is critical to bear in mind that the MPC is fundamentally a "reform movemen[t]." *United States* v. *Bailey*, 444 U. S. 394, 403 (1980). Where that reform involves a definitive break from the state of the law at the time in question, the MPC is of limited value in discerning generic meaning. Such is the case here. The MPC eschews any talk of "obstruction of justice," and instead sets out a series of articles under the heading "Offenses Against Public Administration." ALI, MPC §§ 240–243 (1980). Those articles cover many offenses, such as escape from prison (§ 242.6), perjury (§ 241.1), and bribery (§ 240.1) that are clearly not generic obstruction of justice (indeed, perjury and bribery are listed separately from obstruction of justice in § 1101(a)(43)(S)). Even in the article that most closely parallels traditional obstruction of justice (§ 242.1 "Obstructing Administration of Law or Other Governmental Function"), the MPC gave the word "'obstructs'" an "expansive meaning," § 242.1, Comment 2, at 203, and "intended" for the offense described to "reach all legitimate activities of government," not just "the administration of justice," *id.*, at 203–204. Because of these departures, which have not been widely adopted, the MPC carries little weight for purposes of discerning the core that forms generic obstruction of justice.

Despite these issues, the majority focuses, again without justification, on the MPC's description of witness tampering (§ 241.6). See *ante*, at 606. Even setting aside the now-

_____

Brief for Respondent in No. 22–331, pp. 26–28 (collecting statutes). Of the remaining 11 States that located their witness tampering statutes in the part of the Criminal Code prohibiting "obstructing" or "obstruction" of "justice," at least 7 required a connection to a pending investigation or proceeding. See Ind. Code Ann. § 35–44–3–4(a)(1); Md. Ann. Code, Art. 27, § 26; Miss. Code Ann. § 97–9–55; Nev. Rev. Stat. Ann. § 199.230 (1996); N. C. Gen. Stat. Ann. § 14–266 (1996); Vt. Stat. Ann., Tit. 13, § 3015; W. Va. Code Ann. § 61–5–27. State law on the whole thus favors a pending investigation or proceeding requirement for generic obstruction of justice.

familiar circularity of this reasoning, this definition does not help the majority either.   In describing witness tampering, the MPC reformers chose to depart from "laws requiring that a proceeding or investigation actually be pending," § 241.6, Comment 2, at 166, by requiring only a "belie[f] that an official proceeding or investigation is pending *or about to be instituted*," § 241.6(1) (emphasis added).   That intentional departure is reason alone to treat this MPC description with caution when articulating generic obstruction of justice. Yet, the majority goes much further than the MPC reformers by dismissing the notion that at least a foreseeable investigation or proceeding should be required.   See *ante*, at 607, n. 2. That statement by the Court reflects just how far afield it has wandered from the heartland of obstruction of justice.

Perhaps sensing the weakness of its evidence, the Court falls back on the Government's "commonsense point," Reply Brief 4, that "one can obstruct the wheels of justice even before the wheels have begun to move," *ante*, at 606.   Yet the intuitive idea that "obstruction can only arise when justice is being administered," *Pettibone*, 148 U. S., at 207, finds support in common sense to at least the same degree.   But while both formulations find some support in common sense, the same cannot be said regarding other clues about generic meaning.   Considered together, the relevant history, dictionaries, and federal and state laws provide powerful evidence that obstruction of justice "as commonly understood," *Descamps*, 570 U. S., at 257, when Congress enacted 8 U. S. C. § 1101(a)(43)(S) in 1996, requires a pending investigation or proceeding.

## II

In a feeble attempt to shore up its argument, the Court resorts to a seemingly limitless construction of "relating to obstruction of justice," § 1101(a)(43)(S), according to which the phrase "relating to" covers all offenses "that have 'a connection with' obstruction of justice," *ante*, at 607.   That reading is a direct result of the Court's failure to consider statu-

SOTOMAYOR, J., dissenting

tory text and context when interpreting "relating to." After all, "in isolation" that phrase is endlessly expansive because, absent a statute-specific "limiting principle," relations "stop nowhere." *Maracich* v. *Spears*, 570 U. S. 48, 59–60 (2013) (internal quotation marks omitted). Here, one look at statutory text and context confirms that "relating to" must have a narrower meaning.

The text of the INA "makes [non-U. S. citizens] removable based on the nature of their convictions, not based on their actual conduct." *Esquivel-Quintana*, 581 U. S., at 389. This explains why, when applying § 1101(a)(43)(S), courts use the categorical approach, which compares the elements of the statute of conviction to the generic offense. Without a delineated generic offense, however, this comparison falters. The Court's nebulous reading of "*relating to* obstruction of justice, perjury or subornation of perjury, or bribery of a witness," § 1101(a)(43)(S) (emphasis added), fails to grapple with this reality. Rather than ask whether a conviction is a categorical match for, say, generic "perjury," the majority seems to suggest courts should ask if the conviction has "a connection with" generic perjury. If that is what the majority intends, it is not clear what that question means or how courts should go about answering it.

In contrast, no such problem arises if "an offense relating to . . . perjury" or "an offense relating to obstruction of justice" is understood narrowly to mean simply "an offense qualifying as generic perjury" or "an offense qualifying as generic obstruction of justice." The broader statutory context confirms this reading. Again and again, § 1101(a)(43) uses the phrase "relating to" in descriptive parentheticals to introduce an ordinary language description of other aggravated felonies. For example, to identify the money laundering offenses in 18 U. S. C. § 1956, the INA refers to "an offense described in section 1956 of title 18 (*relating to laundering of monetary instruments*)." § 1101(a)(43)(D) (emphasis added). This structure, which the INA repeats well

over a dozen times, see §§ 1101(a)(43)(D)–(E), (H)–(N), confirms that the phrase "relating to" is used in the INA simply to introduce (not expand upon) a general description of the intended crime category.

The Court's seemingly expansive reading of "in relation to" is also refuted by its consequences for the statutory text. If all that is required is a "connection with" something that "obstruct[s] the wheels of justice," *ante*, at 606–607, then the Government has open season to argue that all sorts of crimes that hinder law enforcement (*e. g.*, failing to report a crime) or make detection of a crime more difficult (*e. g.*, money laundering) qualify as offenses "relating to obstruction of justice." On this approach, certain other aggravated felonies listed in the INA (*e. g.*, § 1101(a)(43)(D) (money laundering)) will collapse into "obstruction of justice," leading to substantial superfluity in the statute. Indeed, the separate categories of perjury and bribery of a witness listed in the very same subparagraph, § 1101(a)(43)(S), will themselves be part of that collapse.

More importantly, an expansive reading of "in relation to" opens the door for the Government to argue that many low-level offenses that fall outside of core obstruction of justice are "aggravated" felonies, even though the INA reserves that label for "especially egregious felonies." *Esquivel-Quintana*, 581 U. S., at 394. For example, misdemeanor convictions for failing to report a crime, presenting false identification to an officer, refusing to aid a police officer, leaving the scene of a crime, or purchasing a fake ID could be taken to count as "relating to obstruction of justice." See Brief for National Immigrant Justice Center et al. as *Amici Curiae* 10–25 (collecting offenses).[12]

─────────

[12] Of course, many of the convictions the Government seeks to shoehorn into "obstruction of justice" are serious offenses, even if they are not a categorical match for obstruction of justice. Such convictions, however, may render non-U. S. citizens removable for other reasons (*e. g.*, if they qualify as crimes involving moral turpitude). Moreover, when noncitizens

SOTOMAYOR, J., dissenting

This significant potential for "redundancy," "unfairness," and "arbitrary" enforcement should have led the Court to "exercise interpretive restraint," *Marinello* v. *United States*, 584 U. S. 1, 9, 11 (2018) (internal quotation marks omitted), when construing "relating to."   Indeed, the many problems with an expansive reading of "relating to" raise the question whether the Court even really intends to adopt such a reading, especially because the relevant discussion occupies a single paragraph.   Perhaps instead the Court simply offers up "connection with" as a synonym for "relating to," leaving it for lower courts to settle what that phrase actually means.

## III

While the evidence assembled here is far stronger than any offered by the majority, the sheer complexity of the task at hand leaves lingering ambiguity, even if the Court claims it does not see it.   Cf. a*nte*, at 610.   To the extent doubts remain, however, they are resolved in favor of a narrower understanding of § 1101(a)(43)(S) by the "longstanding principle of construing any lingering ambiguities in deportation statutes in favor of the [non-U. S. citizen]."   *INS* v. *Cardoza-Fonseca*, 480 U. S. 421, 449 (1987).

This Court resolves doubts in favor of the non-U. S. citizen in keeping with the general rule that ambiguities in penal statutes should be construed against the government. After all, deportation is not only a kind of "penalty," but a "drastic measure" often "the equivalent of banishment or exile." *Fong Haw Tan* v. *Phelan*, 333 U. S. 6, 10 (1948). Nowhere is that truer than here. Aggravated felonies under the INA are "a category of crimes singled out for the harshest deportation consequences." *Carachuri-Rosendo* v.

─────────

are removable, any discretionary immigration relief for which they may be eligible will "depen[d] upon the discretion of the Attorney General." *Carachuri-Rosendo* v. *Holder*, 560 U. S. 563, 581 (2010). Thus, any difference between the majority and the dissent in terms of "practical effect on policing our Nation's borders . . . is a limited one." *Ibid.*

*Holder*, 560 U. S. 563, 566 (2010). If a non-U. S. citizen is convicted of an aggravated felony, even if she has a green card and has lived in this country for years, she is subject to removal and is also ineligible for readmission and many forms of immigration relief. See 8 U. S. C. §§ 1158(b)(2), 1182(a)(9)(A), 1182(h), 1227(a)(2)(A)(iii), 1229b(a)(3), 1229c(a)(1). "Accordingly, removal is a virtual certainty for [a non-U. S. citizen] found to have an aggravated felony conviction, no matter how long he has previously resided here." *Sessions* v. *Dimaya*, 584 U. S. 148, 153 (2018). Moreover, a person convicted of an "aggravated felony" faces heightened criminal sanctions for disobeying orders of removal, § 1253(a)(1), or reentering the United States without permission, § 1326(b)(2). For example, the penalty for illegal reentry skyrockets from 2 years to 20. See §§ 1326(a), (b)(2).

This Court has been clear that, in the face of such stakes, it "will not assume that Congress meant to trench on [a non-U. S. citizen's] freedom beyond that which is required by the narrowest of several possible meanings of the words used." *Fong Haw Tan*, 333 U. S., at 10. While it may be true that certain broader readings of "obstruction of justice" are "at least plausible," *ante*, at 613 (JACKSON, J., concurring), that is not good enough because it is, at the very minimum, at least equally plausible that "obstruction of justice" requires a pending investigation or proceeding. The Court should have "err[ed] on the side of underinclusiveness" when interpreting § 1101(a)(43). *Moncrieffe*, 569 U. S., at 205.

## IV

By rejecting a central feature of core obstruction of justice and adopting a seemingly expansive reading of "relating to," the Court leaves generic obstruction of justice without any discernible shape. The Court thus injects further chaos into the already fraught question of how to understand § 1101(a)(43)(S) and opens the door for the Government to try to use that provision as a catchall for all sorts of criminal activity, whether aggravated or not.

SOTOMAYOR, J., dissenting

The Court could perhaps have reined in some of that chaos by giving "obstruction of justice" affirmative shape and boundaries in other ways, but it makes no effort to do so. Instead, the Court simply rejects the legal proposition that a pending investigation or proceeding is required for a predicate offense to qualify under § 1101(a)(43)(S). At bottom, its reasoning in support of that conclusion boils down to a simple syllogism, which it clothes in various guises: (1) Dissuading a witness from reporting a crime to the police qualifies as obstruction of justice; (2) the offense of dissuading a witness from reporting a crime does not require a pending investigation or proceeding; thus (3) some offense qualifying as obstruction of justice does not require a pending investigation or proceeding.

The flaw in this syllogism is, of course, premise (1). By assuming, up front and without reason, that dissuading a witness from reporting a crime qualifies as obstruction of justice, the Court oversteps. Congress could, if it wanted, add witness tampering to the INA's lengthy list of aggravated felonies, just as it did with the list of offenses at § 1101(a)(15)(U)(iii), but it has not done so. The Court's decision today makes that judgment call for Congress. "Our license to interpret statutes does not include the power to engage in such freewheeling judicial policymaking." *Pereida* v. *Wilkinson*, 592 U. S. 224, 241 (2021).

The syllogism's conclusion is also noteworthy for its narrowness. In the end, all the Court really holds is that generic obstruction of justice includes one offense (dissuading a witness from reporting a crime) that does not require a pending investigation or proceeding. Lower courts faced with difficult questions about what offenses qualify as categorical matches for § 1101(a)(43)(S) would do well to bear in mind the limited nature of that holding. Many open questions remain regarding whether offenses other than dissuading a witness from reporting a crime are categorical matches for § 1101(a)(43)(S), what affirmative understanding of § 1101(a)(43)(S) should guide that categorical analysis, and

whether other offenses that also lack a connection to a pending investigation or proceeding can qualify under that analysis.[13]  I do not take the majority to be addressing any of these questions, and great care is warranted in answering them in the future.

*     *     *

By eliminating a central constraint on what qualifies as "an offense relating to obstruction of justice" under § 1101(a)(43)(S), while providing zero affirmative guidance as to what sorts of offenses are a match for that category, the majority leaves lower courts and the Board of Immigration Appeals without direction and invites the Government to advance far-ranging constructions of § 1101(a)(43)(S) that bear little resemblance to core obstruction of justice.  I would leave it to Congress, not the Judiciary, to decide which additional crimes should be listed as aggravated felonies under the INA.  I respectfully dissent.

---

[13] On this list of open questions is whether state accessory-after-the-fact convictions like petitioner Pugin's are a categorical match for § 1101(a)(43)(S).  The majority affirms the Fourth Circuit's legal holding that a pending investigation or proceeding is unnecessary for an offense to qualify under § 1101(a)(43)(S).  The majority is conspicuously silent, however, regarding the underlying offense itself and whether it is obstruction of justice under § 1101(a)(43)(S).  And for good reason, because accessory offenses have their own distinct pedigree and purpose with historical roots far afield from that of obstruction of justice.  Cf. R. Perkins, Parties to Crime, 89 U. Pa. L. Rev. 581, 581–582, 605–607 (1941).

REPORTER'S NOTE

The attached opinion has been revised to reflect the usual publication and citation style of the United States Reports. The revised pagination makes available the official United States Reports citation in advance of publication. The syllabus has been prepared by the Reporter of Decisions for the convenience of the reader and constitutes no part of the opinion of the Court. A list of counsel who argued or filed briefs in this case, and who were members of the bar of this Court at the time this case was argued, has been inserted following the syllabus. Other revisions may include adjustments to formatting, captions, citation form, and any errant punctuation. The following additional edits were made:

p. 629, line 2 from bottom: "money" is replaced with "monetary"
p. 632, line 12: "heighted" is replaced with "heightened"