NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2023 VT 60

No. 22-AP-211

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Rutland Unit, |
| | Criminal Division |
| | |
| Walter Taylor, III | May Term, 2023 |

David R. Fenster, J.

Evan Meenan, Deputy State's Attorney, Montpelier, for Plaintiff-Appellee.

Matthew Valerio, Defender General, Rebecca Turner, Appellate Defender, and Clelia Casciola, Appellate Clerk (On the Brief), Montpelier, for Defendant-Appellant.


PRESENT: Reiber, C.J., Eaton, Carroll, Cohen and Waples, JJ.


¶ 1. **WAPLES, J.** Defendant appeals from his convictions for aggravated assault, attempted domestic assault, assault and robbery, and obstruction of justice, following a jury trial. He argues that the trial court erred in denying his request for a voluntary intoxication instruction and his motion for a judgment of acquittal on the obstruction-of-justice charge. We affirm.

¶ 2. The following evidence was presented at trial. On an evening in July 2021, defendant got into an argument with his ex-girlfriend, who was pregnant with the couple's second child. The argument began in defendant's apartment and continued outside in the apartment building's parking lot. Video surveillance captured the argument as well as defendant assaulting his ex-girlfriend. A neighbor heard the argument and went onto her second-floor balcony to see what was happening. The parking-lot area was well-lit and the neighbor saw a pregnant woman and a larger man standing close to one another in an aggressive stance, arguing. The neighbor

called police.  After several minutes, she went outside to observe the events because the argument was continuing and the police had not yet arrived.  The neighbor heard defendant's ex-girlfriend tell defendant that she was pregnant and that he needed to stop hitting and hurting her; she saw defendant shove his ex-girlfriend.  The neighbor told defendant to get his hands off the woman and that the police were on their way.  The neighbor was recording the incident on her cellphone; she wanted proof of what was happening because the police were taking a long time to arrive.

¶ 3.  Defendant's ex-girlfriend alerted defendant that the neighbor was recording the incident on her cellphone.  Defendant then charged toward the neighbor, swearing and threatening to kill her.  The neighbor testified that defendant physically attacked her, punching her in the head and kicking her in the ribs.  The neighbor saw defendant pick up her phone from the middle of the street and leave with it.  The phone was never recovered.  The neighbor did not see anyone else on the street that night aside from defendant and his ex-girlfriend.

¶ 4.  A responding police officer found the neighbor in the road.  The neighbor suffered multiple injuries including a broken nose, fractured ribs, and a large laceration on her forehead that required ten stitches.  The State also submitted, among other things, photographs of the neighbor's injuries, video surveillance from outside the apartment that showed the argument and an assault, and evidence of blood on the steps leading to defendant's apartment.

¶ 5.  Defendant's ex-girlfriend acknowledged fighting with defendant that evening.  She testified that the fight concerned defendant's drinking and it escalated after she dumped out defendant's drink. The argument continued outside where defendant took a swing at her.  The ex-girlfriend saw the neighbor come outside and yell that she had called the police.  According to the ex-girlfriend, defendant then chased after two men walking down the street; he tried to hit them but missed and fell down because he was "pretty drunk."  The ex-girlfriend said that one of the strangers on the street attacked the neighbor.  She acknowledged telling police at the time that defendant hit her in the face, attacked the neighbor, and that she was scared of defendant.

2

¶ 6. The responding police officer also testified about the events that evening. She spoke with the ex-girlfriend, located the neighbor, and called an ambulance. The officer found defendant at the emergency room with one swollen hand and a laceration on the other. Defendant told the officer that he had been assaulted. The officer observed that defendant appeared mildly to moderately intoxicated. She testified that defendant was speaking and walking fine; he seemed very alert as to what was going on; he acknowledged pain by comments he was making; and he had also chosen to go to the emergency room.

¶ 7. Another neighbor who saw the attack also testified. He said he saw a man chasing a woman on the street and the man then physically assaulted the woman. Another woman came to the scene and this woman and defendant ran away. The witness did not see any other people on the street.

¶ 8. Defendant did not testify or present any evidence. As discussed in additional detail below, the court denied defendant's request for a jury instruction on voluntary intoxication. It found that the evidence was insufficient to establish that defendant was intoxicated to a point that would affect his ability to form the necessary mental state for the charged crimes. Defendant argued in his motion for a new trial that the court erred in denying his instruction request, and the court rejected this argument on the same ground. The court also denied defendant's motion for a judgment of acquittal on the obstruction-of-justice charge. It deemed the State's evidence sufficient to support a conclusion that defendant assaulted the neighbor because she was attempting to record the events to provide evidence to police. The jury found defendant guilty of the charges noted above and this appeal followed.

I. Voluntary Intoxication Instruction

¶ 9. Defendant first argues that the court erred in denying his request for a voluntary intoxication instruction. He maintains that there was sufficient evidence to show that alcohol impairment prevented him from having the requisite mental state to commit the crimes for which

3

he was convicted. Defendant points to evidence he believes supports his position, including: his ex-girlfriend's testimony that he had consumed two black cherry Mike's Harder Lemonades and some portion of a third; her statement that he stumbled and slurred his words "a little bit"; and photographs of several alcoholic beverage containers in his home. Defendant also cites his ex-girlfriend's testimony that their argument concerned his drinking; the responding officer's belief that he was minorly to moderately intoxicated; and his ex-girlfriend's testimony that he swung and missed when he tried to hit two strangers on the street and that he didn't connect because he was "pretty drunk." Defendant maintains that, in denying his request, the trial court inappropriately weighed the evidence and resolved conflicts in the State's favor.

¶ 10. We reject these arguments. There is no dispute that "[i]ntoxication may affect a person's ability to form the mental state requisite for conviction of certain crimes" and "[w]hen specific intent is an element of a crime, evidence of either voluntary or involuntary intoxication may be introduced to show that the defendant could not have formed the necessary intent." State v. Kinney, 171 Vt. 239, 243, 762 A.2d 833, 837 (2000) (quotation omitted). "Where there is evidence of intoxication such as to negate the requisite criminal intent, the court should normally instruct the jury that it may consider the intoxication evidence as bearing on intent." Id. (citing cases). "Of course, if the evidentiary support is absent, no such instruction is warranted." Id. (citing cases).

¶ 11. Defendant incorrectly asserts that even slight evidence of intoxication warrants an instruction. We have made clear that "[e]vidence of alcohol or drug consumption, even in large quantities" is not in itself sufficient to warrant an instruction. Id. There must be a nexus between such evidence and the effect it has on a defendant's mental state. "[I]ntoxication is not a defense unless it reaches the point where defendant fails to achieve the state of mental responsibility required by the charge." Id. (quotation omitted).

¶ 12. In Kinney, we found the evidence sufficient to warrant a jury instruction on voluntary intoxication, although we found the question "relatively close." Id. at 244, 762 A.2d at 838. The defendant there was convicted of kidnapping, aggravated sexual assault, and lewd and lascivious behavior. Evidence was presented at trial to show that the defendant "consumed at least twelve beers during the course of the evening"; he also used cocaine and smoked marijuana. Id. at 241, 762 A.2d at 836. The defendant's friend "testified that [the] defendant appeared intoxicated" and the defendant acknowledged at trial "that his faculties would have been fairly clouded given the amount of coke, alcohol and pot [he] had consumed over the course of the evening." Id. (brackets omitted). We emphasized that the consumption of intoxicants alone did not suffice but concluded that all of this evidence together warranted a voluntary-intoxication instruction. Id. at 244, 762 A.2d at 838.

¶ 13. We engaged in a similar analysis in State v. MacFarland, 2021 VT 87, 216 Vt. 126, 275 A.3d 110. In that case, the defendant was convicted of unlawful trespass and resisting arrest. The evidence showed that the defendant "consumed nearly two liters of wine in less than an hour"; she "testified that she blacked out in the bar" where the charged acts occurred; she "did not form coherent responses to questions and directions put to her" at the time of the charged acts; "a preliminary breath test . . . indicated the presence of alcohol," and a police officer at the scene testified that the defendant's "yelling, her erratic behavior, the screaming, [her] general disorderly behavior [which included an] inability to follow directions, [and] not listening to directions" were all indicative of [her] intoxication." Id. ¶ 25. We considered this evidence sufficient to show "that defendant's alcohol consumption may have been a significant factor in her conduct on the evening in question and that a court might conclude this evidence supported a diminished capacity defense." Id.

¶ 14. The facts in these cases are distinguishable from the evidence presented here. As set forth above, in Kinney, there was evidence that the defendant consumed a very large quantity

of alcohol and other drugs over the course of an evening. In <u>MacFarland</u>, there was evidence that the defendant consumed a large quantity of alcohol in a short amount of time. In both cases, there was at least some evidence that the alcohol had some impact on the defendants' mental state. That evidence was missing here.

¶ 15. As the trial court explained, there was no evidence here regarding the size of the containers of the beverages that defendant had consumed, the timeframe in which they were consumed, or their alcohol concentration, factors that defendant acknowledges are relevant here. See <u>State v. Cameron</u>, 514 A.2d 1302, 1309 (N.J. 1986) (stating that relevant factors that may warrant an instruction include "the quantity of the intoxicant consumed" and "the period of time involved").

¶ 16. The evidence did not establish a nexus between alcohol consumption and an effect on defendant's ability to achieve the state of mental responsibility required by the charges. The responding police officer observed "minor to moderate" signs of intoxication, describing them as minor because defendant "was speaking fine," "walking fine," "very alert to what was going on," responsive to pain, and he had been able to make the choice to go to the emergency room. While defendant's ex-girlfriend testified that defendant was "pretty drunk" and "acting intoxicated," we agree with the trial court that there was scant support in the record for those conclusory assertions. In so concluding, we are not weighing the evidence, as defendant asserts, but rather considering the facts upon which the ex-girlfriend's opinion was based. See V.R.E. 701 (stating in relevant part that if "witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are . . . rationally based on the perception of the witness"). The ex-girlfriend testified that defendant missed when swinging at the two other people who were allegedly on the street because he was "pretty drunk." When specifically asked about defendant's physical manifestations of intoxication, the ex-girlfriend described defendant as "stumbling a little bit" and "slurring his words a little bit."

¶ 17.  There was no evidence introduced to suggest that alcohol had impaired defendant's mental status.  The only evidence regarding defendant's mental status as it related to his alcohol consumption was the responding officer's observations at the hospital, which suggested that defendant was in control of his mental faculties.  As the trial court explained, moreover, there was significant video evidence of defendant's conduct at the time of the assault that did not support a finding that defendant was so impaired by alcohol that he failed to achieve the state of mental responsibility required by the charges.  We agree with the trial court that the evidence of intoxication was insufficient to call into question whether defendant was capable of forming the required intent or whether he actually formed the required intent.  Defendant remained free to argue that the State failed to prove beyond a reasonable doubt that he formed the needed intent.  See Kinney, 171 Vt. at 243, 762 A.2d at 838 (emphasizing, in considering argument that instruction was warranted,  that "jury was [not] told that voluntary intoxication was irrelevant to whether defendant committed the crimes," jury was provided "full and fair explanation of the intent elements of the crimes" without objection, and defendant "was free to argue to the jury that the State failed to prove that defendant had the requisite intent in light of the intoxication evidence").

¶ 18.  Defendant offers no persuasive argument to undermine the analysis above.  As noted, we reject the argument that the trial court resolved conflicting testimony against defendant in reaching its conclusion or weighed the evidence in the light most favorable to the State.  Our law does not require a voluntary-intoxication instruction "as long as the evidence supports a reasonable conclusion that the defendant was impaired, even if slight," as defendant asserts.

¶ 19.  The court did not shift the burden of proof to defendant, assuming arguendo that this argument was raised below.  The court considered the evidence presented at trial in reaching its conclusion, the same evidence identified by defendant in this appeal.  Because the evidence did not support an instruction, the court did not err in denying defendant's request nor did its decision

deprive him of his right to a fair trial.[1]  See State v. Duford, 163 Vt. 630, 631, 660 A.2d 736, 737 (1995) (mem.) (holding that no instruction required where evidence insufficient to establish defendant's diminished capacity); State v. Day, 149 Vt. 165, 167, 540 A.2d 1042, 1043 (1987) (explaining that only such instructions should be given as arise from and can be based upon the evidence).  Defendant's first claim of error is without merit.

## II.  Obstruction of Justice

¶ 20.    We thus turn to defendant's motion for a judgment of acquittal on the obstruction-of-justice charge.  Defendant was convicted of violating 13 V.S.A. § 3015 by "corruptly or by threats or force or by any threatening letter or communication, obstruct[ing] or imped[ing], or endeavor[ing] to obstruct or impede the due administration of justice."  The trial court concluded that, "taking the evidence in the light most favorable to the State and excluding modifying evidence, the State . . . introduced evidence fairly and reasonably tending to show the defendant's guilt beyond a reasonable doubt."  Kinney, 171 Vt. at 245, 762 A.2d at 839 (citation omitted).

¶ 21.    The trial court cited the following evidence in reaching its conclusion.  On the night in question, the neighbor heard an argument occurring outside her apartment and looked outside to investigate the source.  From her second-floor balcony, the neighbor observed defendant and his ex-girlfriend arguing in a parking lot.  After several minutes, the neighbor called the police.  At some point before the police arrived, the neighbor left her apartment and walked down to the intersection where the argument was occurring.  The parties continued to argue and the neighbor

---

[1]  To the extent that defendant argues that the court's denial of his request violated his due process rights, he fails to show that he raised this argument below.  We therefore do not address it.  See State v. Sole, 2009 VT 24, ¶ 13, 185 Vt. 504, 974 A.2d 587 ("Arguments that are neither litigated nor decided below will not be addressed for the first time on appeal." (quotation omitted)); see also V.R.A.P. 28(a)(4) (stating that appellant must explain what issues are and how they were preserved, with citations to authorities, statutes, and parts of record relied upon).

As part of his brief, defendant has also provided a citation to the trial transcript where a police officer testified that, during a search of defendant's apartment, he found beer bottles in the sink.  There was no testimony to show whether this alcohol was consumed, when, or by whom, and defendant fails to show that he raised this assertion to support his instruction request below.

observed defendant shove his ex-girlfriend. The neighbor told defendant to take his hands off the neighbor and that the police were on the way. She was using her phone to record what she was seeing. The ex-girlfriend remarked that the neighbor appeared to be recording what was happening. Defendant then began to swear at the neighbor, charged at her, said he would kill her, asked where she lived, and assaulted her. Taking this evidence in the light most favorable to the State, the court found that the jury could reasonably conclude that defendant assaulted the neighbor because she was attempting to witness and record what she was seeing to provide that information to police.

¶ 22. The court rejected defendant's suggestion that there must be an ongoing investigation at the time of the alleged obstruction. It found no such requirement in the language of § 3015 or in the case law. The court explained that defendant assaulted a person who appeared to be videorecording his conduct after that person told defendant that the police were on their way and the nexus between defendant's acts and a prospective matter to be heard was sufficient to support a conviction. For the same reason, the court also rejected defendant's argument that there was no connection made between the neighbor and a law enforcement investigation. It reiterated that defendant acted immediately against a person who appeared to be videorecording his conduct after that person told him that the police were on the way. The neighbor saw the argument and saw defendant shove his ex-girlfriend; defendant's earlier assault against the ex-girlfriend had already been captured on surveillance video. While the neighbor might have not specifically told defendant who called the police, the court found that defendant would likely have understood that it was the neighbor who called police when she approached him and the ex-girlfriend and said police were on their way. No one else was present. The neighbor's knowledge that the police had been called made it likely that she was the caller and the jury could reasonably draw that inference from the available evidence.

9

¶ 23. The court also rejected defendant's assertion that there was no evidence tending to show that he knew his actions were likely to affect a future judicial proceeding. Given the evidence recited above, it found that the jury could reasonably infer that defendant had "knowledge that his actions [were] likely to affect a judicial proceeding and that his endeavor [had] the natural and probable effect of interfering with that proceeding." State v. Fucci, 2015 VT 39, ¶¶ 11, 13, 198 Vt. 482, 117 A.3d 419. Put another way, the court explained, defendant's conduct, if successful, "would reasonably and foreseeably have obstructed the due administration of justice." Id. ¶ 12. The court thus denied the motion for judgment of acquittal.

¶ 24. Defendant argues on appeal that the court erred in ascertaining the elements of 13 V.S.A. § 3015. According to defendant, the "due administration of justice" language in that statute encompasses only conduct that is connected to the proper functioning and integrity of courts and judicial proceedings and it does not include conduct that occurs before the involvement of law enforcement, such as with an investigation. He argues that no investigation had begun here at the time of the alleged assault.[2]

¶ 25. Assuming a motion for a judgment of acquittal is the appropriate vehicle for this type of challenge, we reject defendant's argument because it is at odds with our case law and the plain language of § 3015. We made clear in State v. O'Neill, 165 Vt. 270, 271, 682 A.2d 943, 943 (1996), that the existence of a pending judicial proceeding is not required to prove obstruction of justice. The U.S. Supreme Court has recently made this clear as well, holding that "that an offense 'relates to obstruction of justice' even if the offense does not require that an investigation or proceeding be pending." Pugin v. Garland, 599 U.S. 600, 604 (2023). We find this authority persuasive and reject defendant's assertion that obstruction of justice requires a pending

---

[2] Defendant fails to show that he preserved his argument that applying 13 V.S.A. § 3015 to pre-investigative conduct would render the statute void for vagueness. See V.R.A.P. 28(a)(4) (stating that appellant must explain how its arguments were preserved below, with citations to authorities, statutes, and parts of record relied upon). We therefore do not address this argument. See Sole, 2009 VT 24, ¶ 13.

investigation. We further reject his assertion the State was required, and failed, to prove that his conduct "have a connection with a future, prospective—not speculative—judicial proceeding."

¶ 26. In O'Neill, the defendants were charged under the "omnibus clause" of 13 V.S.A. § 3015 with corruptly endeavoring to obstruct or impede the due administration of justice. Relying on the interpretation of a federal statute similar to Vermont's law, the defendants argued that "the existence of a pending judicial proceeding is an element of the crime" of obstruction of justice under 13 V.S.A. § 3015. We rejected that argument.

¶ 27. In reaching our conclusion, we looked at the federal statute on which the Vermont law was based. We noted that in an 1893 decision, the U.S. Supreme Court had interpreted the federal law at issue to require "knowledge or notice or information of the pendency of proceedings in the United States court, or the progress of the administration of justice therein." Id. at 274, 682 A.2d at 945 (quoting Pettibone v. United States, 148 U.S. 197, 205 (1893)). We found this interpretation "arguably reasonable in light of the express language of the [federal] statute, which referred only to the obstruction of the due administration of justice within the courts of the United States." Id. We noted that, notwithstanding "numerous amendments to the federal statute, including the deletion from the omnibus clause of any reference to courts or court proceedings, a majority of federal courts [had] persisted in holding that a violation cannot occur absent a pending judicial proceeding." Id.

¶ 28. We recognized in O'Neill that "common sense dictates that present conduct can obstruct the administration of justice in future proceedings." Id. at 275, 682 A.2d at 946. Looking at the plain language of the Vermont law, we concluded that it did not require a "pending proceeding" as the defendants argued. We determined that the "[d]efendants' conduct, which included advocating the making of false statements and destroying material evidence," fell within the language of the statute. Id. We emphasized that the law made "no reference to a 'pending proceeding requirement, and such a requirement [was] not necessary to reasonably limit the law

11

to a proper scope." Id. at 275-76, 682 A.2d at 946. To the contrary, we explained, "such a requirement would make the statute wholly ineffective where judicial proceedings [had] not been initiated." Id. at 276, 682 A.2d at 946.

¶ 29. We also emphasized the different language involved in the Vermont law as compared to the federal law, concluding that § 3015 "was intended to apply to a broader range of conduct than the federal statute," encompassing "conduct that obstruct[ed] the administration of justice in matters 'already heard, presently being heard, or to be heard before any court of the state." Id. at 275, 682 A.2d at 946-47 (quoting 13 V.S.A. § 3015). We noted that the federal scheme also specifically targeted different types of criminal behavior in different statutes "whereas the Vermont scheme consist[ed] of one broadly written statutory section intended to cover all of" the areas covered by the federal scheme, including obstructing a criminal investigation and tampering with a witness. Id. at 277, 682 A.2d at 947. For all of these reasons, we rejected the argument that "the existence of a pending judicial proceeding is an element of the crime" of obstruction of justice. Id. at 271, 682 A.2d at 943.

¶ 30. The U.S. Supreme Court has also recently rejected the argument that obstruction of justice requires a pending investigation or proceeding. See Pugin v. Garland, 599 U.S. 600, 602 (2023) (holding "that an offense may 'relate to obstruction of justice' . . . even if the offense does not require that an investigation or proceeding be pending"). The Court found its conclusion supported by "[d]ictionary definitions, federal laws, state laws, and the Model Penal Code." Id. at 604. It looked to Merriam-Webster's Dictionary of Law as an example, which defined "obstruction of justice" to cover " 'the crime or act of willfully interfering with the process of justice and law,' including 'by influencing, threatening, harming, or impeding a witness, potential witness, juror, or judicial or legal officer or by furnishing false information in or otherwise impeding an investigation or legal process.' " Id. (quoting Merriam-Webster's Dictionary of Law 337 (1996)). It cited additional dictionary definitions in a similar vein. See, e.g., B. Garner, A

Dictionary of Modern Legal Usage 611 (2d ed. 1995) (stating that the offense "captures every willful act of corruption, intimidation, or force that tends somehow to impair the machinery of the civil or criminal law"); Black's Law Dictionary 1077 (6th ed. 1990) (referencing "obstructing the administration of justice in any way"). "Notably missing from those dictionary definitions," the Court explained, was "a requirement that an investigation or proceeding be pending." Pugin, 599 U.S. at 604. The dictionary definitions "demonstrate[d] that obstruction of justice includes offenses where an investigation or proceeding is pending, but is not limited to offenses where an investigation or proceeding is pending." Id. at 604-05.

¶ 31. Making reference to the different federal scheme for obstruction of justice, the Court recognized that, "[i]n accord with the dictionary definitions," the federal scheme "ha[d] long proscribed various obstruction offenses that [did] not require a pending investigation or proceeding." Id. at 605. It found this equally true of many state obstruction offenses. Id. (citing, among other cases, O'Neill, 165 Vt. 270, 682 A.2d 943). The Model Penal Code, as well, "generally d[id] not require that an investigation or proceeding be pending" for "obstruction offenses." Id. at 606.

¶ 32. The Court emphasized that this "extensive body of authority—dictionaries, federal laws, state laws, and the Model Penal Code—reflect[ed] common sense." As it made clear:

> Individuals can obstruct the process of justice even when an investigation or proceeding is not pending. For example, a murderer may threaten to kill a witness if the witness reports information to the police. Such an act is no less obstructive merely because the government has yet to catch on and begin an investigation. . . . [O]ne can obstruct the wheels of justice even before the wheels have begun to move; indeed, obstruction of justice is often most effective when it prevents an investigation or proceeding from commencing in the first place.

Id. at 606-07 (quotation omitted).

¶ 33. We reach the same conclusion here. The plain language of § 3015 does not include the restrictions suggested by defendant, nor does our case law.

13

¶ 34. Defendant offers no persuasive argument to the contrary. As set forth above, the law does not require the existence of a police investigation before an individual can be found guilty of obstruction of justice. The plain language of the law does not exclude "conduct that has taken place before the involvement of law enforcement," as defendant asserts. The words "due administration of justice" cannot be reasonably read to support such an interpretation for the reasons discussed above. The obstruction-of-justice statute does not require that defendant know that police would "actually intervene" in response to the neighbor's call or "begin an investigation resulting in a future judicial proceeding." Contrary to defendant's assertion, moreover, there was evidence supporting defendant's knowledge that the neighbor called the police, which is outlined above. Finally, we consider defendant's citation of United States v. Aguilar, 515 U.S. 593, 599 (1995), unpersuasive. That case involves the federal obstruction statute that we distinguished in O'Neill on the basis that, among other things, it involved different statutory language than 13 V.S.A. § 3015. We find no error in the court's denial of defendant's motion for judgment of acquittal on the obstruction-of-justice charge.

Affirmed.

FOR THE COURT:

_____

Associate Justice

14