Filed 12/6/23  P. v. Taghilou CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>FARAMARZ TAGHILOU,<br><br>    Defendant and Appellant. | B324856<br><br>(Los Angeles County<br>Super. Ct. No. A708409) |

APPEAL from an order of the Superior Court of Los Angeles County, David W. Stuart, Judge.  Affirmed.

Rich Pfeiffer, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Idan Ivri, Supervising Deputy Attorney General, and Gabriel Bradley, Deputy Attorney General, for Plaintiff and Respondent.

# INTRODUCTION

Faramarz Taghilou filed a motion under Penal Code section 1473.7 to vacate his 1988 conviction for oral copulation of a person under the age of 14, arguing he was not adequately advised of the immigration consequences of his no contest plea.[1] The trial court held a hearing and denied the motion. Because Taghilou has not shown it was reasonably probable he would have rejected the plea had he understood the immigration consequences of the conviction, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *The Conviction and Prior Postconviction Proceedings*

In 1987 the People charged Taghilou with one count of participating in an act of oral copulation with a person under 14 years of age and more than 10 years younger (former § 288a, subd. (c))[2] and three counts of committing a lewd or lascivious act upon a child under the age of 14 (§ 288, subd. (a)). In 1988 Taghilou pleaded no contest to the oral copulation charge in exchange for (1) a "three-year lid" (meaning the trial court would not sentence him to prison for more than three years),[3]

---

[1]     Statutory references are to the Penal Code.

[2]     Former section 288a was renumbered as section 287. (See Stats. 2018, ch. 423, § 49.)

[3]     A lid "constrains the maximum sentence a trial court may impose but is less than the maximum exposure the defendant would otherwise face absent the agreed-upon lid." (*People v. Cuevas* (2008) 44 Cal.4th 374, 376.)

(2) submitting to a diagnostic study under section 1203.03,[4] and (3) dismissal of the remaining counts. (See *People v. Taghilou* (June 25, 2014, B248510) [nonpub. opn.] (*Taghilou I*).) During the plea hearing, the prosecutor (at the trial court's direction) advised Taghilou, "If you are not a citizen, a conviction of this criminal offense could result in your deportation, exclusion from the United States, or denial of naturalization. Do you understand that?" After conferring with his counsel, Taghilou responded: "Okay. Yes." At the sentencing hearing a few months later, the trial court sentenced Taghilou to 116 days in jail with credit for time served and three years of formal probation. Pursuant to section 290, the trial court also required Taghilou to register as a sex offender. (*People v. Taghilou* (May 13, 2021, B303561) [nonpub. opn.] (*Taghilou II*).) After the probationary period expired, the trial court allowed Taghilou to withdraw his no contest plea, entered a plea of not guilty, and dismissed the case under section 1203.4.

Twenty years later, Taghilou filed a motion to vacate his conviction or, in the alternative, for an order relieving him of his obligation to register as a sex offender. Taghilou argued that he had not been adequately advised he would have to register as a sex offender for life and that lifetime registration was not part of the plea agreement. The trial court initially denied the motion, ruling it did not have discretion under section 290 to relieve

---

[4]     "Penal Code section 1203.03 empowers a sentencing court to temporarily commit a convicted felon to a diagnostic facility of the Department of Corrections [and Rehabilitation] for a report containing a 'diagnosis and recommendation concerning the disposition of the defendant's case.'" (*People v. Tang* (1997) 54 Cal.App.4th 669, 672.)

3

Taghilou of his obligation to register as a sex offender. We reversed that order and directed the court, notwithstanding section 290, "to conduct an evidentiary hearing and determine whether there was an affirmative agreement or implicit understanding between the parties regarding the consequences of [Taghilou's] plea." (*Taghilou I*, *supra*, B248510.) On remand the trial court relieved Taghilou of his obligation to register as a sex offender.

B. *Taghilou Files a New Motion To Vacate His Conviction on the Ground He Was Not Adequately Advised of the Immigration Consequences of His Plea*

In 2019, 30 years after he pleaded no contest, Taghilou filed another motion to vacate his conviction—the motion that gives rise to this appeal. Taghilou brought this motion under section 1473.7, arguing he did not understand the immigration consequences of his plea and conviction. The trial court initially denied the motion without a hearing and without appointing counsel to represent Taghilou. We reversed that order and directed the trial court "to determine whether the court should appoint counsel for Taghilou, to appoint counsel if appropriate, and to hold a hearing on Taghilou's motion to vacate his conviction." (*Taghilou II*, *supra*, B303561; see § 1473.7, subd. (d) ["All motions" to vacate a conviction under section 1473.7 "shall be entitled to a hearing."]; *People v. Fryhaat* (2019) 35 Cal.App.5th 969, 981 ["section 1473.7 . . . provide[s] the right to appointed counsel where an indigent moving party has set forth factual allegations stating a prima facie case for entitlement to relief under the statute"].)

4

On remand, the trial court appointed counsel for Taghilou. In a supplemental filing in support of his motion to vacate the conviction, Taghilou did not discuss the prosecutor's advisement about potential immigration consequences during the plea hearing or argue the advisement was insufficient. Instead, Taghilou asserted he "was in need of a Farsi interpreter and did not fully understand the English language that was used in obtaining his plea." Taghilou explained in his declaration he left Iran and arrived in the United States in 1983 because his "brother-in-law was a marine who was one of the hostages in the U.S. Embassy" and Taghilou "feared for [his] life." Taghilou hired Melvin Sacks as his attorney after the preliminary hearing. Taghilou said that he "wanted . . . to go to trial," but that Sacks "kept telling" him "they will put 12 white bitches up there and you will be convicted and go to prison and this is not a good time because you are Iranian and the hostage situation just happened."

Taghilou stated that he was "convicted by the judge," but that he "did not understand everything [the judge] was saying." He asked Sacks for a Farsi interpreter, but Sacks said: "[Y]our English is fine and just answer what the judge asks you." According to Taghilou, he was "never explained about immigration" and "never fully understood what [he] was doing by pleading no contest" or "what would happen to [him] in the future," and Sacks "did nothing to help [Taghilou] prove his innocence . . . ." Taghilou stated that he had "been a responsible citizen of the United States . . . with no other arrests or convictions but for the one in 1987" and that the conviction had "kept [him] from traveling to Iran to see [his] family and to conduct family business as well as other travels."

C.    *Taghilou and Sacks Testify at the Hearing*

Taghilou testified at the hearing on the motion to vacate his conviction under section 1473.7, again stating that he did not understand English well enough to understand the nature of the court proceedings and that he asked Sacks for an interpreter but did not get one.  When asked by the prosecutor whether he committed the crime of oral copulation of a person under the age of 14, Taghilou said:  "No I did not. . . .  That's why there is no proof, no witness, no evidence.  No, that is false."  Taghilou stated that he did not understand the terms of the plea or his sentence and that he thought he was "going to prison for three years for something that [he] didn't do."

As stated, at the 1988 plea hearing Taghilou answered "yes" when he was asked whether he understood that his conviction may have immigration consequences.  He also answered "yes" when asked whether he understood the terms of his plea.  At the hearing on the motion to vacate his conviction, the prosecutor asked Taghilou why he had answered "yes" to those questions in 1988.  Taghilou answered that he did not understand the questions and that he said "yes" because he looked at Sacks and Sacks "got angry" and said, "Don't f'ing look at me, say yes."

Taghilou testified that he was seeking to vacate his conviction because he wanted "to get [his] citizenship" and that he was currently in deportation proceedings but had not been deported to Iran because of the Convention Against Torture.[5]

---

[5]    "Under federal immigration law, noncitizens who commit certain crimes are removable from the United States.  During

6

Taghilou stated that since 2000 he has had "to register every year with immigration" and inform immigration officials any time he leaves California and that he "was just tired of it . . . ." On cross-examination, Taghilou admitted that (notwithstanding the statement in his declaration he had not committed any other crimes since 1987) in 1999 he was convicted in federal court on two counts of bankruptcy fraud and that he was sentenced to 10 months in federal prison.

Sacks testified he first represented Taghilou in 1987 after Taghilou was charged with willfully injuring, destroying, secreting, abandoning, or disposing of insured property with intent to defraud. (See § 548.) Sacks also stated he represented Taghilou in 1992 after Taghilou was charged with committing battery on his two sisters.[6] According to Sacks, he and Taghilou had no difficulty communicating in English, and Taghilou never requested an interpreter; rather, Taghilou told Sacks he learned English in school in Iran and "prided himself" on how well he spoke it. Sacks also denied telling Taghilou how to respond to

---

removal proceedings, a noncitizen may raise claims under the international Convention Against Torture, known as CAT. If the noncitizen demonstrates that he likely would be tortured if removed to the designated country of removal, then he is entitled to CAT relief and may not be removed to that country (although he still may be removed to other countries)." (*Nasrallah v. Barr* (2020) 590 U.S. ___, ___ [140 S.Ct. 1683, 1687].)

[6]     Sacks testified that the insurance fraud case was "resolved in [the] courthouse" prior to the preliminary hearing and that Taghilou received "probation . . . with community service." Sacks testified he withdrew from the battery case. The record does not reflect how the battery case resolved.

the prosecutor's questions and advisements at the 1988 plea hearing.

D. *The Superior Court Denies Taghilou's Motion Under Section 1473.7*

The superior court denied Taghilou's motion to vacate his conviction under section 1473.7. The court explained that granting the motion "would require [the court] to indulge in this fiction that [Taghilou] didn't understand what was going on in 1988 at the time the plea was taken." The court found that, before Taghilou filed the motion, there was "nothing in the record . . . indicating there was any kind of problem at all." The court also found Taghilou was not a credible witness. Taghilou timely appealed.

## DISCUSSION

A. *Applicable Law and Standard of Review*

Section 1473.7, subdivision (a)(1), authorizes a person who is no longer in custody to file a motion to vacate a conviction on the ground it is "legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a conviction or sentence." (See *People v. Espinoza* (2023) 14 Cal.5th 311, 319 (*Espinoza*); *People v. Coca* (2023) 96 Cal.App.5th 451, 457.) To prevail, the "defendant must first show" by a preponderance of the evidence "that he did not meaningfully understand the immigration consequences of his plea. Next, the defendant must show that his misunderstanding constituted prejudicial error." (*Espinoza*, at

8

p. 319; see § 1473.7, subd. (e)(1) ["[t]he court shall grant the motion to vacate . . . if the moving party establishes, by a preponderance of the evidence, the existence of any of the grounds for relief specified"]; *People v. Vivar* (2021) 11 Cal.5th 510, 517 (*Vivar*).) "'[P]rejudical error . . . means demonstrating a reasonable probability that the defendant would have rejected the plea if the defendant had correctly understood its actual or potential immigration consequences.'" (*Espinoza*, at p. 319; see *Vivar*, at p. 529.)

"We apply independent review to evaluate whether a defendant has demonstrated a reasonable probability that he would have rejected the plea offer had he understood its immigration consequences. [Citation.] "'[U]nder independent review, an appellate court exercises its independent judgment to determine whether the facts satisfy the rule of law,'" but "must give deference to the trial court's factual determinations if they are based on ""the credibility of witnesses the [superior court] heard and observed."""" (*Espinoza*, *supra*, 14 Cal.5th at pp. 319-320; see *Vivar*, *supra*, 11 Cal.5th at p. 527; *People v. Coca*, *supra*, 96 Cal.App.5th at p. 458.) "Ultimately it is for the appellate court to decide, based on its independent judgment, whether the facts establish prejudice under section 1473.7." (*Vivar*, at p. 528; see *People v. Curiel* (2023) 92 Cal.App.5th 1160, 1173.)

B.     *Taghilou Has Not Shown Prejudicial Error*
On appeal Taghilou has abandoned the arguments he made in the trial court; namely, that he did not understand English well enough to understand the immigration consequences of his plea and that he needed a Farsi interpreter. Instead, Taghilou now argues the advisement he received from the prosecutor

9

during the plea hearing—that his conviction "could result in [his] deportation, exclusion from the United States, or denial of naturalization"—was insufficient.  Citing *People v. Ruiz* (2020) 49 Cal.App.5th 1061 (*Ruiz*), Taghilou contends "the words 'may have' [or here, "could have"] in a section 1016.5 immigration advisement"[7] are not sufficient where the defendant is charged with a deportable offense.  Instead, "[d]efendants must be advised that they *will be* deported, excluded, and denied naturalization as a *mandatory* consequence of the conviction."  (*Ruiz*, at p. 1065.)  Therefore, Taghilou argues, "he is now entitled to vacate his plea."

Taghilou takes the court's statement in *Ruiz* out of context.  When the court in *Ruiz* stated a defendant must be advised he or she will be deported, the court was applying the Supreme Court's holding in *People v. Patterson* (2017) 2 Cal.5th 885 (*Patterson*) to the facts in *Ruiz*.  In *Patterson* the Supreme Court held a person is not "barred from seeking section 1018 relief on grounds of mistake or ignorance"[8] solely because he or she received the

---

[7]     Section 1016.5, subdivision (a), provides:  "Prior to acceptance of a plea of guilty or nolo contendere to any offense punishable as a crime under state law, except offenses designated as infractions under state law, the court shall administer the following advisement on the record to the defendant:  [¶]  If you are not a citizen, you are hereby advised that conviction of the offense for which you have been charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States."

[8]     Section 1018 authorizes a trial court, "at any time before judgment, or within six months after an order granting probation

10

standard section 1016.5 advisement prior to the plea.  (*Patterson*, at pp. 895-896.)  The Supreme Court explained that a "defendant entering a guilty plea may be aware that some criminal convictions may have immigration consequences as a general matter, . . . yet be unaware that a conviction for a specific charged offense will render the defendant subject to mandatory removal" and that, "for many noncitizen defendants deciding whether to plead guilty, the 'actual risk' that the conviction will lead to deportation . . . will undoubtedly be a 'material matter[ ]' that may factor heavily in the decision whether to plead guilty."  (*Id.* at pp. 895-896.)  In *Ruiz* the defendant filed a motion under section 1473.7 to vacate her conviction, arguing she "'was not advised by her attorney that, because of her plea in this case, she would be rendered permanently ineligible to ever become a legal resident of the United States.'"  (*Ruiz*, *supra*, 49 Cal.App.5th at pp. 1064-1065, italics omitted.)  The trial court initially denied the motion because the court had given the defendant the standard section 1016.5 advisement.  The court in *Ruiz* reversed, citing *Patterson* for the proposition that "the words 'may have' in a section 1016.5 immigration advisement are not an adequate immigration advisement" where the conviction will result in mandatory immigration consequences.  (*Id.* at p. 1065.)

Neither *Patterson* nor *Ruiz*, however, stands for the proposition the trial court or the prosecutor at the court's

---

if entry of judgment is suspended," to permit the defendant "for a good cause shown" to withdraw a guilty plea and substitute a plea of not guilty.  (§ 1018; see *Patterson*, *supra*, 2 Cal.5th at p. 894.)  "'Mistake, ignorance or any other factor overcoming the exercise of free judgment is good cause for withdrawal of a guilty plea' under section 1018."  (*Patterson*, at p. 894.)

direction (as opposed to the defendant's attorney) must advise the defendant that his conviction will result in mandatory immigration consequences or that a defendant who receives the standard advisement under section 1016.5 is automatically entitled to vacate his or her conviction, even where the defendant has not shown he or she did not understand the adverse immigration consequences of the conviction. As the Supreme Court explained in *Patterson,* "[o]ne of the purposes of the section 1016.5 advisement is to enable the defendant to seek advice *from counsel* about the actual risk of adverse immigration consequences." (*Patterson, supra,* 2 Cal.5th at p. 896, italics added.) That is because, when "federal immigration law specifies in 'succinct, clear, and explicit' terms that a criminal conviction will result in deportability, . . . a criminal defense attorney must accurately advise his or her client of that consequence before the client enters a guilty plea. [Citation.] The generic advisement under section 1016.5 is not designed, nor does it operate, as a substitute for such advice." (*Id.* at p. 898; see *In re Hernandez* (2019) 33 Cal.App.5th 530, 544-545.) "[T]o hold that ignorance of specific immigration consequences may constitute good cause to withdraw a plea is not to hold that the trial court is under a duty to provide such case-specific immigration advice." (*Patterson,* at p. 897.)

Taghilou did not prove by a preponderance of the evidence he did not understand the immigration consequences of his plea, as he was required to do to obtain an order under section 1474.7 vacating his conviction. (See *Espinoza, supra,* 14 Cal.5th at p. 319.) While Taghilou generally stated in his declaration that no one ever explained to him the immigration consequences of his plea, the basis of his motion was that he was not sufficiently

12

proficient in English to understand what the court, the prosecutor, and his attorney told him and that he needed a Farsi interpreter. We defer to the trial court's express finding that Taghilou's testimony was not credible and implied finding that Sacks's testimony was. In addition, there were no contemporaneous records indicating Taghilou had difficulty understanding English, and Taghilou had a history of fraud charges and convictions—crimes Taghilou failed to disclose when he stated in his declaration he had "no other arrests or convictions." (See *People v. Castro* (1985) 38 Cal.3d 301, 315 ["[o]bviously it is easier to infer that a witness is lying" if he or she has been convicted of a felony that "involves dishonesty as a necessary element"]; *People v. Burns* (1987) 189 Cal.App.3d 734, 738 ["it is undeniable conviction of a crime involving dishonesty" is "probative of veracity"]; see also *Vivar*, *supra*, 11 Cal.5th at p. 527 ["factual determinations that are based on "'the credibility of witnesses the [superior court] heard and observed"' are entitled to particular deference"].)

In any event, even if Taghilou satisfied the first step of the section 1437.7 analysis—that he did not understand the immigration consequences of his plea—he did not satisfy the second—that it was reasonably probable he would have rejected the plea had he understood its immigration consequences. (See *Espinoza*, *supra*, 14 Cal.5th at p. 319.) Taghilou barely addresses the prejudice requirement. The only evidence he cites in his opening brief is a single statement in his motion that, had he known of the adverse immigration consequences of his plea and had it been "explained to [him] in his familiar language," he "would not have accepted the plea" and would have gone to trial "to explain [his] side." This statement is not sufficient. Where

13

the defendant contends he would have rejected a plea had he correctly understood its immigration consequences, he or she "must corroborate [such] assertions with ""objective evidence.""" (*Espinoza*, at p. 316; see *Vivar*, *supra*, 14 Cal.5th at p. 530.) "Objective evidence includes facts provided by declarations, contemporaneous documentation of the defendant's immigration concerns or interactions with counsel, and evidence of the charges the defendant faced." (*Espinoza*, at p. 321.) Taghilou does not cite any such evidence in his opening brief.

Moreover, the record contains insufficient evidence to corroborate Taghilou's statement. "To determine whether there is a reasonable probability a defendant would have rejected a plea offer if he had understood its immigration consequences, courts must 'consider the totality of the circumstances.' [Citation.] 'Factors particularly relevant to this inquiry include the defendant's ties to the United States, the importance the defendant placed on avoiding deportation, the defendant's priorities in seeking a plea bargain, and whether the defendant had reason to believe an immigration-neutral negotiated disposition was possible.'" (*Espinoza*, *supra*, 14 Cal.5th at p. 320; see *Vivar*, *supra*, 11 Cal.5th at pp. 527-528.) "Also relevant are the defendant's probability of obtaining a more favorable outcome if he had rejected the plea, as well as the difference between the bargained-for term and the likely term if he were convicted at trial." (*Espinoza*, at p. 320; see *People v. Martinez* (2013) 57 Cal.4th 555, 564 ["a factor pertinent to the decision to accept or reject a plea may be the "'disparity between the terms of the proposed plea bargain and the probable consequences of proceeding to trial, as viewed at the time of the offer"'"].) "These factors are not exhaustive, and no single type of evidence is a

14

prerequisite to relief." (*Espinoza*, at p. 321; see *People v. Curiel*, *supra*, 92 Cal.App.5th at p. 1173.)

Ties to the United States are particularly important in corroborating a defendant's assertion he or she would have rejected a plea "because they shed light on a defendant's immigration priorities." (*Espinoza*, *supra*, 14 Cal.5th at p. 321; accord, *People v. Villalba* (2023) 89 Cal.App.5th 659, 673.) "[W]hen long-standing noncitizen residents of this country are accused of committing a crime, the most devastating consequence may not be a prison sentence, but their removal and exclusion from the United States." (*Vivar*, *supra*, 11 Cal.5th at p. 516.) "Community ties may be established by length of residence; immigration status; lack of connection to the country of origin; connections to family, friends, or the community; work history or financial ties; or other forms of attachment." (*Espinoza*, at p. 321.)

Taghilou had some ties to the United States at the time of his conviction. He had lived in the United States for five years, and his brother-in-law allegedly served in the United States Marines. However, Taghilou's ties were far less extensive than those courts typically find sufficient to corroborate the defendant's contention he or she would have rejected a plea had he or she understood the immigration consequences. (See *Espinoza*, *supra*, 14 Cal.5th at p. 322 [defendant came to California when he was 13 years old, had lived in California for 23 years, and had a wife and five children who were United States citizens]; *Vivar*, *supra*, 11 Cal.5th at p. 530 [defendant came to the United States when he was six years old, lived in the United States for 40 years, and "had two children, two grandchildren, and a wife" who were United States citizens];

15

*People v. Lopez* (2022) 83 Cal.App.5th 698, 707, 715 [defendant came to the United States with his mother and siblings when he was 13 years old, had lived in the United States for nine years, "became a father figure and assumed responsibility for his younger siblings," and provided financial support to his mother]; *People v. Soto* (2022) 79 Cal.App.5th 602, 611 [defendant came to the United States as a teenager, lived in the United States for over 20 years, had children and family in the United States, "was gainfully employed," and before sentencing "specifically advised the probation officer he did not want to be deported"]; cf. *People v. Bravo* (2021) 69 Cal.App.5th 1063, 1076 (*Bravo*) [that the defendant came to the United States when he was 18 years old and lived in the United States for four and a half years was insufficient to corroborate his contention he would have rejected plea], review dism. May 31, 2023.)  Indeed, according to his declaration, Taghilou was "relatively new to the United States and was not that familiar with its customs" when he was convicted.[9]

And beyond Taghilou's somewhat limited ties to the United States, the remaining factors do not support Taghilou's assertion he would not have pleaded no contest in 1988 had he known of the immigration consequences of his plea.  Taghilou did not submit any contemporaneous evidence suggesting he placed any weight on the immigration consequences of his conviction.  By the time Taghilou filed his motion to vacate his conviction 30 years later, he may have been "tired" of having to register annually

---

[9]     Taghilou's strongest ties to the United States developed well after his plea.  Taghilou married a United States citizen 16 years after his plea and later had two children who were born in the United States.

with immigration officials and may have wanted to obtain his citizenship, but there was no evidence Taghilou was concerned about maintaining his eligibility for naturalization in 1988 when he pleaded no contest. (See *Lee v. United States* (2017) 582 U.S. 357, 369 [37 S.Ct. 1958, 1967] ["Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for [asserted] deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences."]; *Bravo*, *supra*, 69 Cal.App.5th at p. 1076 [no prejudice where there was "simply no evidence, contemporaneous or otherwise, outside defendant's self-serving declaration that he gave any thought to his immigration status whatsoever"].) In addition, prior to his plea and conviction in this case, Taghilou had been charged with insurance fraud, and later was charged with and convicted of bankruptcy fraud. As the People point out, "noncitizens convicted of an 'aggravated felony' are removable from the United States" (*Pugin v. Garland* (2023) 599 U.S. 600, 603 [143 S.Ct. 1833, 1839]; see 8 U.S.C. § 1227(a)(2)(A)(iii)), and an offense that "involves fraud or deceit in which loss to the victim or victims exceeds $10,000" qualifies as an "aggravated felony" under the Immigration and Nationality Act (see 8 U.S.C. § 1101(a)(43)(M)(i)). (See *Sessions v. Dimaya* (2018) 584 U.S.___, ___ [138 S.Ct. 1204, 1210-1211] ["removal is a virtual certainty for an alien found to have an aggravated felony conviction, no matter how long he has previously resided here"].) While the record does not reflect whether Taghilou's convictions for bankruptcy fraud involved losses to victim(s) of more than $10,000 and therefore qualified as aggravated felonies (see *Singh v. Attorney General of U.S.* (3d Cir. 2012) 677 F.3d 503, 510

17

["subparagraph (M)(i) requires actual loss"]), that Taghilou committed crimes of deceit that, at a minimum, may have subjected him to removal, both before and after his 1988 conviction, undermines his contention immigration consequences were an important consideration when he entered his plea. (See *People v. Martinez, supra*, 57 Cal.4th 555, 568 ["defendant's criminal record" is relevant to determining whether defendant would have rejected plea offer had he known of immigration consequences]; *People v. Lopez, supra*, 83 Cal.App.5th at p. 715 [same].)

Taghilou also failed to submit any evidence the prosecutor would have considered a plea that did not have adverse immigration consequences, and Taghilou presented only minimal evidence he could have obtained a more favorable outcome at trial. While the prosecutor did state during the plea hearing that "the basis" for the plea was "witness problems," Taghilou did not discuss the evidence the prosecutor presented at the preliminary hearing or what evidence (if any) Taghilou intended to present in his defense. (See *Bravo, supra*, 69 Cal.App.5th at p. 1077 ["Without evidence of the probability of an alternate disposition, . . . a defendant cannot support a showing that it is reasonably probable that, if properly advised, he would have rejected the . . . plea offer 'in the hope or expectation that he or she might thereby negotiate a different bargain or, failing in that, go to trial.'"].)

Finally, the sentence Taghilou received following his no contest plea was significantly less than the sentence he could have received had he been convicted at trial. Taghilou was accused of engaging in sexual acts with a 13-year-old girl when he was 26 years old. He was charged with one count of oral

copulation of a person under the age of 14 and three counts of lewd or lascivious acts upon a child.  Each count carried a prison sentence of three, six, or eight years.  (See former § 288a, subd. (c), § 288, subd. (a).)  If convicted on all counts, Taghilou faced the prospect of a decades-long sentence.  By pleading no contest, he received dismissal of three of the four counts and a maximum prison term of three years on the remaining count, and he ultimately served only 116 days in custody with credit for time served.  (See *People v. Diaz* (2022) 76 Cal.App.5th 102, 115 [defendant did not show prejudice where "[t]here was no other plea offer available" and, if convicted after a trial, the defendant faced twice as many years in prison as he served by entering the plea].)  Given Taghilou's (at best) moderate ties to the United States in 1988, the absence of any contemporaneous evidence suggesting he was at all concerned with immigration consequences, and the favorable sentence he received by pleading no contest, Taghilou has not shown it was reasonably probable he would have rejected the plea had he understood the immigration consequences.

## DISPOSITION

The order is affirmed.


SEGAL, Acting P. J.

We concur:


FEUER, J.                    MARTINEZ, J.

19